## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DWIGHT A. BRIDGES                                              CIVIL ACTION

VERSUS                                                              NO. 17-1925

ROBERT TANNER, WARDEN                                SECTION: "E"(1)

### REPORT AND RECOMMENDATION

      This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

      Petitioner, Dwight A. Bridges, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.  On September 18, 2013, he was convicted of possession of marijuana, third offense, under Louisiana law.[1]  On December 16, 2013, he was found to be a second-felony habitual offender and was sentenced as such to a term of fifteen years imprisonment without benefit of probation or suspension of sentence.[2]  On March 6, 2015, the Louisiana First

---

[1] State Rec., Vol. 4 of 6, trial transcript, p. 773; State Rec., Vol. 1 of 6, minute entry dated September 18, 2013; State Rec., Vol. 1 of 6, jury verdict form.
[2] State Rec., Vol. 4 of 6, transcript of December 16, 2013; State Rec., Vol. 1 of 6, minute entry dated December 16, 2013.

Circuit Court of Appeal affirmed his conviction, habitual offender adjudication, and sentence.[3] The Louisiana Supreme Court then denied his related writ application on February 26, 2016.[4]

On February 21, 2017, petitioner filed the instant federal application seeking habeas corpus relief.[5]  The state has filed a response conceding that the application is timely but arguing that relief should nevertheless be denied.[6]  Petitioner filed a reply to the state's response.[7]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The

---

[3] State v. Bridges, No. 2014 KA 0777, 2015 WL 997162 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 5 of 6.
[4] State v. Bridges, 187 So.3d 467 (La. 2016); State Rec., Vol. 6 of 6.
[5] Rec. Doc. 1.
[6] Rec. Doc. 8.
[7] Rec. Doc. 11.

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at

> hand, then by definition the rationale was not clearly established at the time of the
> state-court decision.    AEDPA's carefully constructed framework would be
> undermined if habeas courts introduced rules not clearly established under the guise
> of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

 The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## II.  Facts

 On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this

case as follows:

> On January 5, 2013, around 9:30 p.m., St. Tammany Parish Sheriff's Office
> Deputy Edward Stone was traveling westbound on Bayou Liberty Road in Slidell,
> Louisiana, with his partner, Deputy Mike Ripoll, who he was training.  Deputy
> Stone observed a blue vehicle traveling eastbound at a high rate of speed.  Using
> his radar, he "clocked" the vehicle's speed at sixty-three miles per hour.  Because
> the posted speed limit was forty-five miles per hour, Deputy Stone turned his
> vehicle around and conducted a traffic stop.  Both deputies approached the vehicle,
> with Deputy Ripoll approaching the driver's side, where the window was rolled
> down, and Deputy Stone approaching the passenger's side, where the window was
> up.  Deputy Stone could smell an odor of marijuana.  He asked the driver,
> later identified as defendant, to exit.  When Deputy Stone requested permission to search
> the vehicle, defendant declined, so the deputy called a K-9 unit to the scene.  While
> the deputies waited for the K-9 unit to arrive, Deputy Ripoll conducted a pat-down
> search of defendant as well as field sobriety tests.  Deputy Ripoll did not locate any
> weapons or illegal contraband on defendant, and defendant passed the tests.
> St. Tammany Parish Sheriff's Office Deputy Ronald Olivier arrived at the
> scene shortly thereafter and conducted a search with his K-9, Thor.  Thor gave a
> narcotic odor response as soon as he approached the rolled-down driver's window.
> Deputy Olivier unleashed Thor and allowed him to enter the vehicle, and Thor
> indicated that he detected narcotics in the passenger glove compartment, which was
> open.  Deputy Olivier searched the glove compartment and located a "balled up"
> piece of paper containing suspected marijuana.  He also located a "blunt."  After

the search, Deputy Olivier gave Deputy Stone the items he recovered.  The contents of both tested positive for marijuana.[8]

### III.  Petitioner's Claims

### A.  Batson Challenge

In his first claim, petitioner argues that his rights were violated when the prosecutor exercised his peremptory challenges in a racially discriminatory manner.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his first assignment of error, defendant contends that the State exercised challenges to jurors based on race, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  Specifically, he objects to the State's challenges to three black female potential jurors.
>
> The Supreme Court in Batson held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person's race.  Batson, 476 U.S. at 89, 106 S.Ct. at 1719.  See also LSA-C.Cr.P. art. 795C-E.  If a defendant makes a prima facie showing of discriminatory strikes, the burden shifts to the State to offer racially neutral explanations for the challenged members.  The neutral explanation must be one which is clear, reasonable, specific, legitimate, and related to the particular case at bar.  If the race-neutral explanation is tendered, the district court must decide whether the defendant has proven purposeful discrimination.  A reviewing court owes the district court judge's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous.  State v. Elie, 05-1569 (La. 7/10/06), 936 So.2d 791, 795.
>
> The Batson explanation does not need to be persuasive, and unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral.  The ultimate burden of persuasion remains on the party raising the challenge to prove purposeful discrimination.  Elie, 936 So.2d at 795-96.  To establish a prima facie case of purposeful discrimination as required by Batson, a moving party need only produce "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred."  Batson's admonition to consider all relevant circumstances in addressing the question of discriminatory intent requires close scrutiny of the challenged strikes when compared with the treatment of panel members who expressed similar views or shared similar circumstances in their backgrounds.  The one relevant circumstance for a district court judge to consider is whether the State articulated "verifiable and legitimate" explanations for striking other minority jurors.  The failure of one or more of the State's articulated reasons for striking a prospective juror does not compel a district

---

[8] State v. Bridges, No. 2014 KA 0777, 2015 WL 997162, at *1 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 5 of 6.

court judge to find that the State's remaining articulated race-neutral reasons necessarily cloaked discriminatory intent.  Id., 936 So.2d at 796.

In the instant case, defendant raised a Batson objection to the State's peremptory challenges to three black female prospective jurors – Mary White, Alice Cousin, and Shannon Doughty.

The State used its first peremptory challenge on potential juror, Mary White. During voir dire, White indicated that she was a receiving associate at Wal-Mart and was married with three children.  She also indicated that she previously served on two juries.

After a jury of six was selected, the State exercised a backstrike on previously selected juror, Alice Cousin.  During voir dire, Cousin stated that she was a retired teacher's aide, a widow, and that she had two adult children.  She previously served on a jury for a rape trial that resulted in a guilty verdict.  After the State exercised the backstrike, defendant objected, arguing that the State cut two of the three black potential jurors.  The court asked the State to demonstrate race-neutral reasons for striking jurors White and Cousin.

According to the State, White previously served on two juries, and both resulted in verdicts in favor of the defense.  Cousin was a retired teacher's aide, and the prosecutor explained that he "never had any luck with teacher's aides."  He indicated that he also considered backstriking another teacher's assistant who was previously selected to serve.  Defense counsel argued that although White served on two juries, one civil and one criminal, she did not vote on the criminal jury trial. The court responded, "But she did indicate that there was a verdict, I believe, in a medical malpractice case for the defendant."[FN 3]  Defense counsel also pointed out that the State did not strike a Caucasian teacher's assistant that was in the jury pool.  The State responded that it planned to backstrike that juror, Erin Worrel, but was unable to because of the interruption due to the Batson objection.[FN 4]

[FN 3]  When asked about prior jury service, White stated, "Yes, I served on two juries – well, two juries.  One was a medical malpractice.  Excuse me.  And one was a criminal case, and they ended up settling before we actually went to trial.  The medical malpractice, the verdict came back for the defendant, not guilty."

[FN 4]  The State subsequently exercised a backstrike on Worrel.

The district court overruled the Batson challenge as to White, finding a sufficient explanation for the State's strike. As to Cousin, the court did not allow the State to exercise a backstrike, and she remained on the jury.  Defense counsel made a partial objection.

The court allowed each party one strike for the alternate juror.  The State challenged potential alternate juror Doughty.  The defendant raised a second Batson objection, arguing that Doughty was one of the three black females.  The State explained that Doughty indicated during voir dire that she felt that marijuana should be legalized and should not be a felony offense.  The court found the State's

explanation to be racially neutral and allowed the challenge on Doughty as an alternate juror.  The defendant objected.

Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the district court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.  See Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).  In the instant case, defendant failed to produce evidence sufficient to permit the district court to draw an inference that discrimination occurred.  Further, the State articulated legitimate race-neutral explanations for striking the minority jurors at issue.  Accordingly, we find no abuse of discretion by the district court in its denial of defendant's Batson challenges regarding the prospective jurors White and Doughty.  Thus, this assignment of error is without merit.[9]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[10]

As the state court noted, the transcript reflects that the prosecutor struck Mary White during the initial challenges and then later stated that he also wanted to backstrike Alice Cousin.  Once the prosecutor announced that he wanted to strike Cousin, the following exchange occurred:

BY MS. MYERS [defense counsel]:
Judge, I would like to make an objection.  As we are all aware, there are very few African-Americans who came into the courtroom for jury service, and Mr. Noriea has cut two of the three, and one is a back strike.

BY THE COURT:
Well, let me ask you this, Mr. Noriea.  Ms. White, by my notes or my recollection, I should say, is African-American, and Ms. Cousin is African-American.  Do you have – can you state to the Court a reason for the strike of either of these two individuals that is not discriminatory in nature?

MR. NORIEA:
Ms. Mary White was on two juries, and they were both defense verdicts, one was civil and one was criminal.
Ms. Cousin is a retired teacher's aide, and I've never had any luck with teacher's aides.

BY MS. MYERS:
Judge, if – I'm sorry, Mr. Noriea, are you finished?

---

[9] State v. Bridges, No. 2014 KA 0777, 2015 WL 997162, at *1-3 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 5 of 6.
[10] State v. Bridges, 187 So.3d 467 (La. 2016); State Rec., Vol. 6 of 6.

BY MR. NORIEA:

     Yes.  That's the particular reasons why.

     And I was actually thinking about striking Ms. Worrel as a backstrike because she's a teacher's assistant, and I'm not sure that there is a difference.

BY THE COURT:

     Okay.  Let me hear from Ms. Myers.

BY MS. MYERS:

     Well, Judge, first I would like to say Ms. White said she did not vote on the criminal case.  She said she was on two juries, one was a medical malpractice and the criminal one, but there was no vote on the criminal one, so I don't –

BY THE COURT:

     But she did indicate that there was a verdict, I believe, in a medical malpractice case for the defendant.

BY MS. MYERS:

     That is correct.  But not two as the State said and not in the criminal case.

BY MR. NORIEA:

     That's not what I understood her to say, but be that as it may.

BY MS. MYERS:

     And Judge, obviously, if Mr. Noriea has struck an African-American female who was a teacher's assistant but left a white person and listed only the reason that they were a teacher's assistant –

BY MR. NORIEA:

     No.  That's not what I'm saying.  I was going back – I was going to back strike Ms. Worrel who was a teacher's assistant.  And I don't know, I hadn't gotten to there yet since this objection came up.[11]

The judge then ruled:  "I do find that based upon the information that Mr. Noriea has provided, that he has provided a sufficient explanation for his strike of Ms. White.  However, I will not allow a back strike of Ms. Cousin."[12]

---

[11] State Rec., Vols. 3 and 4, trial transcript, pp. 606-08.
[12] Id. at p. 609.

After six jurors were selected, the court then proceeded to the selection of an alternate. During that selection process, the prosecutor struck Shannon Doughty. Defense counsel again objected:

> BY MS. MYERS:
> … I would raise the Batson issue with Ms. Doughty since she's an African-American female, one of three.
>
> BY THE COURT:
> Okay. And Mr. Noriea, can you give me –
>
> BY MR. NORIEA:
> The only thing I wanted, Judge, I wanted to get Mr. Passman or Ms. Kristy Coco as better jurors than them.
> Ms. Doughty had similar responses to Mr. Fontenette and Mr. [sic] Thompson about they don't like it but they will do the best to give a verdict. And if I would have got to Thompson and Fontenette with challenges, I would also have done the same thing. And she was in the same boat as Ms. Julie Young that I challenged.
> So those four views, three whites and one Doughty, whatever her name is, are all the same and I would have challenged every one of them.
>
> BY THE COURT:
> Okay. Based upon the explanation provided by the State, I find that the challenge was racially neutral based on his explanation. So I will allow the challenge of Ms. Doughty as an alternate.[13]

Based on this record, the Court finds that petitioner's <u>Batson</u> claim should be rejected for the following reasons.

As the state court correctly noted, petitioner's claim must be analyzed under the three-step process established in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). Specifically:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

<u>Snyder v. Louisiana</u>, 552 U.S. 472, 476-77 (2008) (quotation marks and brackets omitted).

---

[13] <u>Id</u>. at pp. 612-13.

In the instant case, the trial judge did not expressly find that a prima facie case had been established; however, she implicitly did so by requiring the prosecutor to state his reasons for the strikes.  In any event, the prosecutor in fact gave his reasons for his challenges.  Accordingly, the issue of whether defense established a prima facie case at the first step of Batson is therefore moot:

> Where … the prosecutor tenders a race-neutral explanation for his peremptory strikes, the question of Defendant's prima facie case is rendered moot and our review is limited to the second and third steps of the Batson analysis.  See United States v. Broussard, 987 F.2d 215, 220 n. 4 (5th Cir. 1993) (declining to decide whether defendant had established prima facie case of racial discrimination, where district court required explanation for peremptory strikes).

United States v. Williams, 264 F.3d 561, 571 (5th Cir. 2001); see also Hernandez v. New York, 500 U.S. 352, 359 (1991) (plurality opinion) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.").

At the second step, the burden shifts to the striking party to articulate a race-neutral explanation for striking the jurors in question.  Snyder, 552 U.S. at 476.  However, "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause."  Batson, 476 U.S. at 97.  On the contrary, "[a] neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror.  At this step of the inquiry, the issue is the *facial validity* of the prosecutor's explanation.  Unless a discriminatory intent is *inherent* in the prosecutor's explanation, the reason offered will be deemed race neutral."  Hernandez, 500 U.S. at 360 (emphasis added).  Here, the prosecutor's stated reasons for removing the jurors were not inherently indicative of discriminatory intent:  the prosecutor stated that he struck White based on her past jury service, Cousin based on her profession, and Doughty based on her views concerning the criminalization of marijuana and also because he wanted the selection

process to progress to the next two potential jurors whom he deemed more favorable to the prosecution. Obviously, those reasons are *facially* valid and nondiscriminatory.

At the third step, the trial judge evaluates "the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Rice v. Collins, 546 U.S. 333, 338 (2006). As noted, the trial judge in the instant case found that the prosecutor did not exercise his peremptory challenges against White and Doughty in a discriminatory manner; however, she sustained the Batson challenge as to Cousin, who in fact ultimate sat on the jury.[14]

A state court's finding on Batson's third step is a finding of *fact* and, as such, must be reviewed under the AEDPA's specific and highly deferential standard of review applicable to factual determinations. Therefore:

> Under AEDPA, … a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Thus, a federal habeas court can only grant [the petitioner's] petition if it was *unreasonable* to credit the prosecutor's race-neutral explanations for the Batson challenge. *State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence."* § 2254(e)(1).

Rice, 546 U.S. at 338-39 (2006) (emphasis added). Even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, … on habeas review that does not suffice to supersede the trial court's credibility determination." Id. at 341-42. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010)

As an initial matter, the Court notes that the trial judge sustained the Batson challenge as to Cousin. However, out of an abundance of caution, the Court notes that fact is not dispositive.

---

[14] State Rec., Vol. 4 of 6, trial transcript, p. 615.

"[T]he fact that one challenge was sustained on <u>Batson</u> grounds does not establish the validity of other <u>Batson</u> challenges which are rebutted by sufficiently neutral explanations."   <u>Doss v. Frontenac</u>, 14 F.3d 1313, 1317 (8th Cir. 1994).  Moreover, for the following reasons, petitioner has not overcome the presumption of correctness which attaches to the trial judge's factual determination that White and Doughty were excused for nondiscriminatory reasons.

As to White, the prosecutor stated that he struck her because she had returned a verdict for the defendant in a prior criminal case.  Although the prosecutor was mistaken on that point (no verdict was returned in that case), a prosecutor's mistaken belief, if in good faith, does not violate <u>Batson</u>.  <u>See</u> <u>Aleman v. Uribe</u>, 723 F.3d 976, 982 (9th Cir. 2013) ("[I]f a prosecutor makes a mistake in good faith, … then that mistake does not support the conclusion that the prosecutor's explanation is clearly not credible."); <u>see also</u> <u>Lee v. Commissioner, Alabama Department of Corrections</u>, 726 F.3d 1172, 1226 (11th Cir. 2013) ("The conclusion that an honestly mistaken but race-neutral reason for striking a black venire member did not violate <u>Batson</u> was not unreasonable.").  Here, there is no reason to believe that the mistake was in bad faith.

As to Doughty, the prosecutor stated that he struck her based on her view that marijuana possession should not be prosecuted as a felony.  If that was indeed the prosecutor's motive, then his strike was clearly legitimate.  <u>Cf</u>. <u>United States v. Maxwell</u>, 473 F.3d 868, 871 (8th Cir. 2007) ("The government explained that it struck Juror 29 because he appeared to favor the legalization of drugs and because one of his immediate relatives was facing state drug charges.  Maxwell was charged with several drug-related offenses, and therefore the government's explanation for the strike was appropriate and nondiscriminatory.").  Here, the trial court found that the stated motive was not pretextual.  Because that decision is presumed to be correct, petitioner bears the burden to present clear and convincing evidence to rebut that presumption.

Petitioner attempts to meet his burden by arguing that the prosecutor treated other non-minority jurors differently than he treated White. That, of course, is a legitimate way in which a petitioner can meet his burden. See Miller-El v. Dretke, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step."). However, petitioner's attempt in this case is unpersuasive.

During voir dire, four other jurors expressed views similar to Doughty's view concerning the criminalization of marijuana possession: Steve Conravey; Julie Young; Nancy Thompson; Terry Fontenette.[15] Of those four individuals, *none* ultimately served on the jury. Conravey was struck by the defense, Young was struck by the state, and jury selection was completed before a decision had to be made on Thompson and Fontenette. At best, therefore, petitioner could only argue that Conravey was treated differently, in that he was initially deemed acceptable by the state. However, even that argument is unconvincing for two reasons.

First, the state's initial acceptance of Conravey is not determinative. Backstrikes were allowed, and it is possible that the state could have used a backstrike on Conravey if he had not already been struck by the defense.

Second, in any event, Conravey's comments concerning his belief were not equivalent to Doughty's. When the prosecutor first asked the panel whether any prospective juror had "a problem with marijuana being prosecuted as a felony," Conravey voiced no opinion. Doughty, however, stated that she agreed with Mr. Fontenette's prior statement that marijuana should be legalized.[16] The following exchange then occurred:

---

[15] See State Rec., Vol. 3, trial transcript, pp. 553-62.
[16] Id. at p. 555.

BY MR. NORIEA:
     And with that feeling, would you not convict somebody?

BY MS. DOUGHTY:
     No.

BY MR. NORIEA:
     You wouldn't convict them at all?

BY MS. DOUGHTY:
     I would give you a fair chance to present your side, just –

….

BY MR. NORIEA:
     Now, … you are sure about that?

….

BY MS. DOUGHTY:
     Positive.[17]

It was only after a prospective juror raised a question about "the third strike rule" that Mr. Conravey first spoke up.  After that question was posed, the prosecutor asked whether anyone had "reservations" about marijuana possession "being treated as a felony for the third offense."  It was at that point that Conravey first spoke up, stating:  "Yes.  If I was in a position to change the law, I probably would, but I respect the law."[18]  Then, unprompted, he quickly added:  "I'd follow the law."[19]

Based on these exchanges, the undersigned finds that although Doughty and Conravey voiced similar basic opinions on marijuana legalization, their answers during voir dire were not in fact equivalent.  Conravey never suggested that he would be unwilling to convict someone for

---

[17] Id. at 555-56.
[18] Id. at 559.
[19] Id. at 560.

possession of marijuana; Doughty did, although she retreated from that position upon subsequent questioning.

Moreover, it must be remembered that a federal habeas court has only a cold record before it. Therefore, unlike the prosecutor and the trial judge, this Court has no way in which to judge the demeanor of Doughty or to assess the credibility of her purported retreat from her earlier statement. See Davis v. Ayala, 135 S. Ct. 2187, 2201 (2015) ("We have previously recognized that peremptory challenges are often the subjects of instinct and that race-neutral reasons for peremptory challenges often invoke a juror's demeanor. A trial court is best situated to evaluate both the words and the demeanor of jurors who are peremptorily challenged, as well as the credibility of the prosecutor who exercised those strikes. … [T]hese determinations of credibility and demeanor lie peculiarly within a trial judge's province, and in the absence of exceptional circumstances, we will defer to the trial court. Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation." (citations, quotation marks and brackets omitted)); Miller-El v. Cockrell, 537 U.S. 322, 339 (2003) ("[A] reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations.").

Based on the difference in the nature of the responses and the difficulties posed in attempting to evaluate the demeanor and credibility of Doughty and the prosecutor from a cold transcript, this Court, without some further showing by petitioner, is unable to say that the trial judge acted unreasonably in finding that the prosecutor's reason for striking Doughty was not pretextual.

Further, it must be remembered that the prosecutor also gave a second reason for striking Doughty. He stated that he considered the next two potential jurors, James Passman and Kristy

Coco, to both be better jurors for the prosecution. By striking Doughty, he guaranteed that one of those two potential jurors would be selected, in that the defense, having only one strike to exercise, could strike only one of the two. That professed tactic was neither contradicted by the record nor inherently implausible, especially given that Doughty expressed reservations concerning the criminalization of marijuana while Passman and Coco did not.

In the instant case, petitioner has simply failed to meet his burden to establish that the state court's ultimate conclusion that the strikes were not racially motivated was *unreasonable*. He has offered no evidence – and certainly no "clear and convincing evidence" – of a discriminatory motive. Accordingly, applying the deferential standard of review mandated by the AEDPA, this Court should deny his Batson claim.

### B.  Denial of Right to Present Defense

Second, petitioner argues that his rights were violated in that he was denied the opportunity to present his defense. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his second assignment of error, defendant argues that the district court violated his right to present a defense. At trial, defendant requested that the jury be allowed to view defendant's vehicle and stand next to it with the passenger's-side window rolled up and the marijuana located in the same place it was on the night of the incident inside the glove compartment. Defendant argues that the district court's denial of his request violated his right to present a defense because this was the only "direct, dramatic and [definitive] proof he had that the testimony given by St. Tammany Parish Deputies called as State [witnesses] was incredible." Defendant contends that, contrary to his testimony, Deputy Stone could not have smelled the odor of marijuana from outside of the passenger's side of the vehicle with the window rolled up. At trial, he argued that he was attempting to impeach the testimony of Deputy Stone with his request.
>
> The State objected to defendant's request, arguing that opening the driver's-side car window in a parking lot would not accurately depict the scene on the highway on the night of the incident. The State noted that the marijuana was, at the time of trial, eight months old and had been opened and analyzed. The State also pointed out that there was not a way to ensure the vehicle was in the same condition

as it was on the night of the incident, and defendant would be unable to recreate the conditions that existed to which three officers testified.

The district court agreed that a significant amount of time had passed from the date of the incident to trial, and how the vehicle was handled in the interim was unknown. It also agreed that the parties would be unable to recreate the condition of the vehicle and the condition of the marijuana on the night of the incident. The court noted that there was no indication that any of the jurors had experience smelling marijuana. Concluding that the prejudicial nature of the request would outweigh its probative value, the court sustained the State's objection.

A criminal defendant has the constitutional right to present a defense pursuant to United States Constitution Amendments VI and XIV and Louisiana Constitution Article 1, Section 16. A defendant should therefore be allowed to present evidence on any relevant matter. This right is not without limitation, and unreliable evidence may be barred from criminal trials. State v. Blank, 04-0204 (La. 4/11/07), 955 So.2d 90, 130-31, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007). Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by positive law. Evidence which is not relevant is not admissible. LSA-C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. LSA-C.E. art. 403. Ultimately, questions of relevancy and admissibility are discretion calls for the district court and its determination should not be overturned absent a clear abuse of discretion. State v. Duncan, 98-1730 (La.App. 1 Cir. 6/25/99), 738 So.2d 706, 712-13.

The district court did not abuse its discretion in denying defendant's request to allow the jury to stand outside of defendant's car. The concerns expressed by the court, including the passage of time, inability to recreate the conditions existing on the night of the incident, and the possibility that jury members would not be able to identify the scent of marijuana, were reasonable. Based on our review of the record, there is no reason to disturb the finding of the district court. Accordingly, we do not find a denial of defendant's right to present a defense.

This assignment or error is without merit.[20]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[21]

---

[20] State v. Bridges, No. 2014 KA 0777, 2015 WL 997162, at *3-5 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 5 of 6.

[21] State v. Bridges, 187 So.3d 467 (La. 2016); State Rec., Vol. 6 of 6.

To be entitled to federal habeas relief, petitioner must show that the state court decision rejecting this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  For the following reasons, it is clear that he has not made that showing.

The United States Supreme Court has held:  "Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness.  We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense."  California v. Trombetta, 467 U.S. 479, 485 (1984); accord Boyer v. Vannoy, 863 F.3d 428, 451 (5th Cir. 2017).

However, as noted, the state courts found that it was not possible to accurately recreate the conditions of the traffic stop and, therefore, the prejudicial nature of the proposed recreation would outweigh its probative value.  Clearly, such concerns are a permissible basis for excluding such evidence.  In fact, the United States Supreme Court has expressly noted:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its *probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.*

Holmes v. South Carolina, 547 U.S. 319, 326 (2006) (emphasis added).

Therefore, obviously, the state courts applied a rule consistent with (*not* in contradiction to) United States Supreme Court precedent.  In light of that fact, and because petitioner has not pointed to (and the undersigned's research has not found) a United States Supreme Court case with materially indistinguishable facts reaching a contrary result, petitioner has not shown that the state court decision was "contrary to" clearly established federal law.

As a result, to obtain relief, he must show that that state court decision was an "unreasonable application of" clearly established federal law. He has not made that showing. For the reasons noted by the state courts, permitting an inaccurate recreation of the traffic stop would be misleading to the jury and unduly prejudicial.

Further, and more importantly, the United States Supreme Court has never addressed the issue of whether the defense must be allowed to conduct such recreations. As previously noted in this opinion, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

Accordingly, this Court should defer to the state court ruling and deny relief under the standard of review mandated by the AEDPA.

### C. Testimony and Argument Concerning Petitioner's

### Refusal to Consent to the Search of the Vehicle

Third, petitioner argues that his rights were violated by the prosecutor's elicitation of testimony that petitioner refused to consent to the search of the vehicle and by the prosecutor's comment on that refusal during closing argument. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his third assignment of error, defendant argues that the district court erred by allowing the State to elicit testimony related to defendant's invocation of his Fourth Amendment right. Specifically, defendant argues that the State questioned Deputy Ripoll regarding defendant's refusal to consent to a search of his vehicle. Defendant also complains that the State commented on defendant's refusal to consent during its closing argument.
> While Deputy Ripoll was being questioned on cross-examination, defense counsel highlighted defendant's cooperation with the officers' requests before and during the stop. According to Deputy Ripoll's testimony, defendant immediately pulled over when the officers activated the police unit's lights and siren. He

produced his driver's license, registration, and proof of insurance.  Defendant exited the vehicle when asked and complied with the request for a field sobriety test.

On redirect examination, the State said, "Now, I heard a lot of cooperation by the defendant.  He cooperated with this; he cooperated with that; he cooperated with this.  Is there anything he failed to cooperate with?"  Deputy Ripoll responded, "He – when we asked if we could search the vehicle, when Deputy Stone asked if we could search it."  Defense counsel objected, arguing that commenting on defendant's choice to exercise his rights under the Fourth Amendment was improper.  In response, the State argued that defense counsel opened the door by eliciting testimony regarding how cooperative defendant was with the stop.  The State contended that it could show that defendant was not completely cooperative.  Agreeing with the State, the court stated, "But you opened the door with all your other questioning."  The State proceeded to question Deputy Ripoll, asking, "And as a result of the defendant's failure to let you search his car, what did you and the deputy do to remedy that situation?"  Deputy Ripoll answered that Deputy Stone requested the assistance of the K-9 unit.

Defense counsel was allowed to re-cross Deputy Ripoll, and the following exchange occurred:

> [Defense counsel]:  Deputy Ripoll, when [prosecutor] asked you whether or not [defendant] was cooperative and everything, you indicated that he wasn't cooperative in your opinion on the thing, on the request to search his car; is that correct?

> [Deputy Ripoll]:  Correct.

> [Defense counsel]:  You regard someone exercising their Constitutional right to have a search done legally as noncooperative?

> [Deputy Ripoll]:  It wasn't a yes answer, yes, ma'am.

> [Defense counsel]:  So because he said no, he wanted his Constitutional rights, you said that was uncooperative?

> [Deputy Ripoll]:  Yes, ma'am.

Defendant acknowledges in his appellate brief that Louisiana jurisprudence does not address prosecutorial questions and comments related to a defendant's exercise of his right to refuse consent to search and cites United States v. Cooper, 714 F.3d 873 (5th Cir.), cert. denied, ___ U.S. ___, 134 S.Ct. 313, 187 L.Ed.2d 222 (2013), in support of his argument.  However, the federal jurisprudence appears to hold that reference to a defendant's refusal to consent may be admissible for purposes other than to support an inference of guilt.  See United States v. Dozal, 173 F.3d 787, 794 (10th Cir. 1999) (finding such evidence admissible to establish

the defendant's dominion and control over the property subject to the search). Additionally, at least one court has also held that such testimony may be admissible under certain circumstances if "invited" by the defendant's trial strategy. <u>See United States v. McNatt</u>, 931 F.2d 251, 256-58 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1035, 112 S.Ct. 879, 116 L.Ed.2d 783 (1992) (finding that testimony regarding the defendant's refusal to consent to a search of his vehicle was "invited" by his suggestion at trial that the arresting officer "framed" him by planting drugs in the defendant's truck). <u>See United States v. Runyan</u>, 290 F.3d 223, 250 n. 18 (5th Cir.), <u>cert. denied</u>, 537 U.S. 888, 123 S.Ct. 137, 154 L.Ed.2d 149 (2002).  In the instant case, the State elicited the testimony in response to defendant's suggestion that he was entirely cooperative.  Additionally, reference to the fact that defendant did not consent to a search of his vehicle was part of the narrative explanation as to why officers called a K-9 unit to the scene.

Moreover, the officers did not need to obtain defendant's consent in order to search his vehicle.  The testimony established that the officers detected the odor of marijuana emanating from the rolled-down window of the vehicle.  This provided the officers with probable cause to search pursuant to the automobile exception to the warrant requirement.  <u>See</u> <u>State v. Arnold</u>, 11-0626 (La. 4/27/11), 60 So.3d 599, 600 (per curiam).  With regard to defendant's complaint as to the State's comments during closing argument, defendant did not lodge an objection to those comments.[FN 5]  Thus, he did not preserve the issue for review.  <u>See</u> LSA-C.Cr.P. art. 841.

[FN 5]  During rebuttal closing argument, the State stated:

Now, following the logic that the defense seeks to try to confuse you, defense says he didn't run.  Any time – if you run, you are guilty.  So running from the police is guilty.  Yet, refusing to let the police search your car, shouldn't that indicate he knows he's guilty?  Knowingly and intentionally?

How can they justify that statement to you that fleeing indicates guilt, but not permitting a search of the area where the dope is should not indicate guilt?  They are trying to confuse you.  They are trying to insult your intelligence.  They are trying to get you off of the evidence in this case with this – just as straightforward as it can be.[22]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning

additional reasons.[23]

---

[22] <u>State v. Bridges</u>, No. 2014 KA 0777, 2015 WL 997162, at *5-6 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 5 of 6.

[23] <u>State v. Bridges</u>, 187 So.3d 467 (La. 2016); State Rec., Vol. 6 of 6.

Several federal circuit courts have held that a prosecutor's use of such tactics is generally impermissible, and the United States Fifth Circuit Court of Appeals has made that assumption without deciding the issue. For example, the Fifth Circuit has noted:

> This circuit has not directly addressed the question whether a prosecutor commits constitutional error by invoking a defendant's refusal to consent to a warrantless search to support an inference of guilt. However, the circuit courts that have directly addressed this question have unanimously held that a defendant's refusal to consent to a warrantless search may not be presented as evidence of guilt. See, e.g., United States v. Moreno, 233 F.3d 937, 940-41 (7th Cir. 2000); United States v. Dozal, 173 F.3d 787, 794 (10th Cir. 1999); United States v. Thame, 846 F.2d 200, 205-08 (3d Cir. 1988); United States v. Prescott, 581 F.2d 1343, 1351–52 (9th Cir. 1978); but cf. United States v. McNatt, 931 F.2d 251, 256–57 (4th Cir. 1991) (questioning whether a defendant's invocation of his or her Fourth Amendment rights by refusing to consent to a warrantless search is the constitutional equivalent of a defendant's invocation of his or her right to remain silent under the Fifth Amendment, but not reaching the issue). For the purposes of this appeal, we assume without deciding that it would be error of constitutional magnitude for a trial court to permit a prosecutor to comment on (or present testimony regarding) a defendant's refusal to consent to a warrantless search to support an inference of guilt.

United States v. Runyan, 290 F.3d 223, 249 (5th Cir. 2002); accord United States v. Ruiz, 683 Fed. App'x 326, 327 (5th Cir. 2017); United States v. Cooper, 714 F.3d 873, 880 (5th Cir. 2013).

Nevertheless, the fact that various federal *circuit* courts have found the tactic impermissible is of no consequence in a federal habeas corpus proceeding under § 2254. As already noted, and as the state correctly argued in its response in this proceeding, relief is warranted only if petitioner establishes that the state court decision rejecting this claim "was contrary to, or involved an unreasonable application of, *clearly established Federal law, as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added). On that point, the United States Supreme Court has "repeatedly emphasized" that "*circuit precedent* does *not* constitute 'clearly established Federal law, as determined by the Supreme Court.'" Glebe v. Frost, 135 S. Ct. 429,

431 (2014) (quoting 28 U.S.C. § 2254(d)(1)) (emphasis added).  Likewise, the United States Fifth

Circuit Court of Appeals recently noted:

> This circuit's precedents plainly do not constitute "clearly established Federal law,
> as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); see Renico v. Lett,
> 559 U.S. 766, 778, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).  We may not use our
> sister circuits' precedents "to refine or sharpen a general principle of Supreme
> Court jurisprudence into a specific legal rule."  Marshall v. Rodgers, 569 U.S. 58,
> 64, 133 S.Ct. 1446, 185 L.Ed.2d 540 (2013) (per curiam).  Nor may we "canvass
> circuit decisions to determine whether a particular rule of law is so widely accepted
> among the Federal Circuits that it would, if presented to [the Supreme] Court, be
> accepted as correct."  Id. (first citing Parker v. Matthews, 567 U.S. 37, 47-49, 132
> S.Ct. 2148, 183 L.Ed.2d 32 (2012) (per curiam); and then citing Lett, 559 U.S. at
> 778-79, 130 S.Ct. 1855).

Evans v. Davis, 875 F.3d 210, 215-16 (5th Cir. 2017).

Because the *United States Supreme Court* has never held that the United States Constitution

prohibits a prosecutor from eliciting testimony or making comments concerning a defendant's

refusal to consent to a search, the AEDPA requires this Court to defer to the state court decision

denying petitioner's claim.  Accordingly, this claim should be denied.

### D.  Daubert Hearing

Fourth, petitioner claims that his rights were violated by the trial court's refusal to hold a

Daubert hearing.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim,

holding:

> In his fourth assignment of error, defendant argues that the district court
> erred in refusing to conduct a Daubert[FN 6] hearing on the ability of the officers
> to detect the odor of raw marijuana.
>
> [FN 6]  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,
> 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
>
> Louisiana Code of Evidence article 702 dictates the admissibility of expert
> testimony.  Prior to amendment by 2014 La. Acts No. 630, § 1, it provided, "[i]f
> scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto

in the form of an opinion or otherwise." State v. Higgins, 03-1980 (La. 4/1/05), 898 So.2d 1219, 1239, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The supreme court has placed limitations on this codal provision in that, "expert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men." State v. Stucke, 419 So.2d 939, 945 (La. 1982).

In State v. Foret, 628 So.2d 1116 (La. 1993), the Louisiana Supreme Court adopted the test set forth in Daubert regarding proper standards for the admissibility of expert testimony which requires the district court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. State v. Chauvin, 02-1188 (La. 5/20/03), 846 So.2d 697, 700-01. Thus, Louisiana has adopted Daubert's requirement that in order for technical or scientific expert testimony to be admissible under Article 702, the scientific evidence must rise to a threshold level of reliability. Daubert's general "gatekeeping" applies not only to testimony based upon scientific knowledge, but also to testimony based on "technical" and "other specialized knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999); Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La. 2/29/00), 755 So.2d 226, 234. The purpose of a Daubert hearing is to determine the reliability of an expert's methodology, not whether the expert has the proper qualifications to testify. Cheairs v. State ex rel. Dep't of Transp. & Dev., 03-0680 (La. 12/3/03), 861 So.2d 536, 541. See State v. Vidrine, 08-1059 (La.App. 3 Cir. 4/29/09), 9 So.3d 1095, 1106-07, writ denied, 09-1179 (La. 2/26/10), 28 So.3d 268.

At a preliminary examination and hearing on defendant's motion to suppress, Deputy Stone testified that he detected a strong odor of raw marijuana while standing next to the passenger side of defendant's vehicle. Defense counsel objected and requested a Daubert hearing. The court allowed the testimony, and stated a Daubert hearing could be held prior to trial.

Prior to trial, the court asked if there were any outstanding motions. When defense counsel responded that the Daubert issue related to the smell of raw marijuana had not yet been addressed, the court responded that a motion was never filed. Defense counsel explained that she raised the issue in another case and made an oral motion in the instant case during the hearing on the motion to suppress. The State argued testimony on the smell of marijuana was not required to be presented in the form of an expert opinion for which Daubert would apply. The court agreed, noting that an officer can testify as to the smell of marijuana based on his training and experience.

A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert. See State v. Waldrop, 11-2363 (La.App. 1 Cir. 6/8/12), 93 So.3d 780, 784. Deputy Stone testified that he had training in identifying and smelling smoked and unsmoked marijuana. Accordingly, no Daubert hearing was required, and the district court's ruling was correct.

This assignment of error is without merit.[24]

---

[24] State v. Bridges, No. 2014 KA 0777, 2015 WL 997162, at *6-7 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 5 of 6.

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[25]

In this habeas proceeding, it must be remembered that "Daubert is an exegesis of Rule 702 of the Federal Rules of Evidence and governs the admission of expert evidence in federal trials only. Daubert does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution." Kinder v. Bowersox, 272 F.3d 532, 545 n.9 (8th Cir. 2001); see also Norris v. Schotten, 146 F.3d 314, 335 (6th Cir. 1998). Therefore, noncompliance with Daubert is not in and of itself a basis for federal habeas corpus relief. See Schmidt v. Hubert, Civ. Action No. 05-2168, 2008 WL 4491467, at *13 (W.D. La. Oct. 6, 2008) ("Daubert did not set a constitutional standard for the admissibility of expert testimony; the case simply examined the standard for the admissibility of scientific evidence in federal trials conducted in federal courts under the Federal Rules of Evidence. Thus, a claimed violation of Daubert does not equal a constitutional violation." (citations omitted)).

Rather, when a state prisoner is seeking federal habeas relief based on purportedly erroneous evidentiary rulings by a state court, habeas relief is warranted only when the errors were so extreme that they constituted a "denial of fundamental fairness." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998); accord Wilson v. Simmons, 536 F.3d 1064, 1101-02 (10th Cir. 2008) ("Because Daubert does not set any specific constitutional floor on the admissibility of scientific evidence, the only relevant question is whether the [Polymerase Chain Reaction] test rendered the trial fundamentally unfair."). Therefore, the only question for this Court is whether the purported evidentiary error at issue "played a crucial, critical, and highly significant role in the trial." Little, 162 F.3d at 862; accord Schmidt, 2008 WL 4491467, at *14 ("The standard, then, is not whether

---

[25] State v. Bridges, 187 So.3d 467 (La. 2016); State Rec., Vol. 6 of 6.

the testimony satisfied the <u>Daubert</u> test, which does not set forth a constitutional rule on the admissibility of scientific evidence, but rather whether the wrongful admission of evidence rendered the trial fundamentally unfair.  A trial is fundamentally unfair only if the evidence played a 'crucial, critical, and highly significant role in the trial....'" (citations omitted)); <u>Stogner v. Cain</u>, Civ. Action No. 05-4317, 2008 WL 269078, at *13 (E.D. La. Jan. 30, 2008).

Here, the state courts found that there was *no* error – the testimony in question was properly admitted under state evidence law.  That is a finding this Court may not second-guess.  The state courts are the final arbiters of state law.  <u>See</u> <u>Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co.</u>, 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); <u>Dickerson v. Guste</u>, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.  We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)); <u>see</u> <u>Charles v. Thaler</u>, 629 F.3d 494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law.  When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law.").

Moreover, in any event, allowing Deputy Stone to testify, *subject to cross-examination*, that he was able to smell and identify marijuana did not render petitioner's trial fundamentally unfair. On the contrary, witnesses routinely testify about matters they purportedly perceived through their various senses, and triers-of-fact must determine whether those witnesses are credible and could in fact have perceived the action, event, or substance at issue.  This is no different.

For these reasons, petitioner has failed to show that Stone's testimony rendered his trial fundamentally unfair or otherwise violated his federal constitutional rights. Therefore, habeas relief is not warranted with respect to this claim.

### E. Habitual Offender Adjudication

Fifth, petitioner argues that he was wrongly found to be a second-felony habitual offender. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his fifth assignment of error, defendant argues that the district court erred in ruling that he was a second-felony habitual offender. Specifically, defendant contends that the guilty plea entered to his predicate offense was not valid because it was part of a group guilty plea, he was not advised of his postconviction rights, and he was not advised that his guilty plea could be used to enhance a subsequent felony offense.
>
> Defendant filed a motion to quash the multiple offender bill of information, and a hearing on the motion was held. The State argued that failure to advise a defendant of a future multiple offender bill of information did not render the Boykinization defective.[FN 7] The district court agreed, and before denying the motion to quash, explained that the group guilty plea also did not render the Boykinization defective and that the post-conviction relief issue was not relevant.
>
> > [FN 7] See Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
>
> For a guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, the district court must inform a defendant that by pleading guilty he waives: (a) his privilege against compulsory self-incrimination; (b) his right to trial and jury trial where applicable; and (c) his right to confront his accuser. State v. Henry, 2000-2250 (La.App. 1 Cir. 5/11/01), 788 So.2d 535, 541, writ denied, 01-2299 (La. 6/21/02), 818 So.2d 791. The court must also ascertain that the accused understands what the plea connotes and its consequences. If the defendant denies the allegations set forth in the bill of information, the State has the initial burden to prove the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. To meet this requirement, the State may rely on a contemporaneous record of the guilty plea proceeding, i.e., either the transcript of the plea or the minute entry. Everything that appears in the entire record concerning the predicate, as well as the district court judge's opportunity to observe the defendant's appearance, demeanor,

and responses in court, should be considered in determining whether a knowing and intelligent waiver of rights occurred. Boykin only requires that a defendant be informed of the three rights enumerated above. The jurisprudence has been unwilling to extend the scope of Boykin to include advising the defendant of any other rights that he may have. Henry, 788 So.2d at 541.

Moreover, while a personal colloquy between the district court and the defendant is preferred, group guilty pleas are not automatically invalid. See State v. Filer, 2000-0073 (La. 6/30/00), 762 So.2d 1080, 1081 (per curiam); State v. Verdin, 02-2671 (La.App. 1 Cir. 2/3/03), 845 So.2d 372, 376-77 (per curiam).

The transcript of the Boykin hearing indicates that defendant was represented by counsel. At the time of the hearing, defendant was eighteen years old and had completed the eleventh grade. The court individually addressed defendant and explained that he was entering a guilty plea in Docket Number 374,066 for a sexual battery charge. The court defined the offense and possible punishment and asked defendant if he understood. Defendant answered affirmatively. The district court explained to the group that they were waiving constitutional rights including the right to an attorney, right to a trial, right against self-incrimination, right to confront their accusers, right to compulsory process of the court, and the right to appeal. When the court asked defendant whether he understood that by entering a guilty plea, he was admitting that he committed the crime and waiving those rights, defendant answered that he did. The district court also asked defendant whether he was satisfied with his attorney's services and whether his attorney explained the elements of the crime, his constitutional rights, and the ramifications of the guilty plea and possible sentences he could receive. Defendant responded affirmatively and entered his guilty plea. After the district court judge sentenced each of the defendants in the group, he informed them that they had two years from the time their sentences became final to file for post-conviction relief.

First, defendant claims that the prior guilty plea was improperly entered because the district court did not advise him of his post-conviction rights. The transcript refutes defendant's allegation that the court did not advise him of his post-conviction rights. The court advised the group entering guilty pleas that they had two years from the time their sentences became final to file for postconviction relief.

Defendant also claims that he was not advised that his guilty plea could be used to enhance a subsequent felony offense. Although advice with respect to a defendant's sentencing exposure and the possibility of enhancement may facilitate the taking of a voluntary guilty plea, such advice has never formed part of the Supreme Court's core Boykin requirements for the entry of a presumptively valid guilty plea. See State v. Guzman, 99-1528, 99-1753 (La. 5/16/00), 769 So.2d 1153, 1164; State v. Underdonk, 11-1598 (La.App. 1 Cir. 3/23/12), 92 So.3d 369, 378, writ denied, 12–0910 (La. 10/8/12), 98 So.3d 848. Therefore, this contention is not fatal to defendant's predicate guilty plea.

Finally, defendant argues that the group Boykinization rendered his predicate guilty plea defective. As noted above, although a personal colloquy between a district court and a defendant is preferred, group guilty pleas are not

29

automatically invalid.  See Filer, 762 So.2d at 1081; Verdin, 845 So.2d at 376-77; see also State v. Richard, 2000-0659 (La. 9/29/00), 769 So.2d 1177, 1178 (per curiam); State v. Marler, 2000-0493 (La.App. 1 Cir. 2/16/01), 797 So.2d 706, 711. The personal and individual portions of the Boykin colloquy between defendant and the district court judge placed the judge in a position to determine the knowing and voluntary nature of defendant's waiver of constitutional rights as a condition precedent to the judge's acceptance of the plea.  After a thorough review of the record, we find that the State met its initial burden and that defendant failed to produce affirmative evidence to show an infringement of his rights or a procedural irregularity in the taking of his plea.  Therefore, we find that the record establishes that the challenged predicate guilty plea was validly entered with a knowing and voluntary waiver of Boykin rights; and, thus, the district court correctly denied defendant's motion to quash as related to this plea.

This assignment of error is without merit.[26]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[27]

As to petitioner's advisement of his Boykin rights, he does not dispute that he was in fact advised of those three rights (i.e. the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers).  Rather, he merely opines that the advisement was improper because it was conducted as part of a group colloquy.  However, as the state correctly notes in its response, "there is no federal law, as established by the [United States] Supreme Court, that would indicate that a group plea colloquy violates the Constitution."  Pierce v. Vannoy, Civ. Action No. 14-2351, 2015 WL 4509678, at *8 (E.D. La. July 23, 2015) (Morgan, J., adopting recommendation of Wilkinson, M.J.).

As to petitioner's complaint that he was not advised that his guilty plea could be used to enhance a subsequent felony offense, that defect, even if it occurred, is of no moment.  A court's failure to advise a defendant of that fact does not render his guilty plea invalid under either federal or Louisiana law.  See, e.g., Wright v. United States, 624 F.2d 557, 561 (5th Cir. 1980) ("[A] plea's

---

[26] State v. Bridges, No. 2014 KA 0777, 2015 WL 997162, at *7-9 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 5 of 6.

[27] State v. Bridges, 187 So.3d 467 (La. 2016); State Rec., Vol. 6 of 6.

possible enhancing effect on a subsequent sentence is merely a collateral consequence of the conviction; it is not the type of consequence about which a defendant must be advised before the defendant enters the plea."); State v. Jackson, 734 So. 2d 54, 56 (La. App. 2d Cir. 1999) ("A court is not required to inform a defendant that his guilty plea may be used as a basis for the filing of a future multiple offender bill.").

Lastly, as to petitioner's complaint that the trial court failed to advise him of his right to seek post-conviction relief, that complaint is likewise meritless. As noted, the state court found that petitioner (along with the rest of the group entering their pleas) was in fact advised of his right to seek post-conviction relief and of the time limits for doing so.[28]

For these reasons, petitioner has failed to show that his predicate conviction was invalid and could not be used to enhance his current sentence. Therefore, this claim has no merit and should be denied.

## F.  Excessive Sentence

Lastly, petitioner argues that his sentence is excessive. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his last assignment of error, defendant argues that the sentence imposed was constitutionally excessive. Specifically, he contends that by summarily denying his motion to reconsider sentence, the district court prevented him from

---

[28] Further, even if that advisement had not occurred, that would not invalidate his plea. Petitioner has pointed to no authority, and the undersigned has found none, which holds that federal law requires such an advisement. It is true that Louisiana law requires that "[a] the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing." La. Code Crim. P. art. 930.8(C). However, Louisiana courts have held that the provision "is suppIicatory language which does not bestow an enforceable right on an individual defendant." State v. Jackson, 87 So. 3d 174, 182 (La. App. 2d Cir. 2012); accord State v. Brumfield, 16 So. 3d 1161, 1162 (La. 2009) (noting that the provision was not intended "to create a remedy for a trial court's failure to inform the defendant of the limitations period"). Therefore, a trial court's failure to comply with article 930.8(C) does not affect the validity of the conviction or the sentence. State v. Dukes, 606 So. 2d 1144, 1162 (La. App. 2d Cir. 1992) ("This defect has no bearing on the convictions or sentences and is not ground for reversal or remand for resentencing."). Rather, it is merely an error that can be corrected by a subsequent advisement. See, e.g., State v. Batiste, 208 So. 3d 1028, 1035 (La. App. 5th Cir. 2016) ("If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion."), writ denied, 229 So. 3d 929 (La. 2017).

demonstrating that the imposition of prison sentences for possession of marijuana in St. Tammany Parish is affected by race. He also contends that a fifteen-year sentence for "the third possession of a small amount of marijuana meets the test for excessiveness."

Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. State v. Reed, 409 So.2d 266, 267 (La. 1982).

Louisiana Code of Criminal Procedure Article 894.1 sets forth the factors for the district court to consider when imposing sentences. While the entire checklist of Article 894.1 need not be recited, the record must reflect that the district court adequately considered the criteria. State v. Brown, 02-2231 (La.App. 1 Cir. 5/9/03), 849 So.2d 566, 569. A district court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La. 1982). On appellate review of a sentence, the relevant question is whether the district court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Thomas, 98-1144 (La. 10/9/98), 719 So .2d 49, 50 (per curiam).

Pursuant to Louisiana Revised Statutes 40:966E(3), on a third or subsequent conviction for a violation of possession of marijuana, the offender shall be sentenced to imprisonment with or without hard labor for not more than twenty years, and may, in addition, be sentenced to pay a fine of not more than five thousand dollars. However, because defendant was adjudicated a second-felony habitual offender, he was exposed to a sentence of imprisonment for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. See LSA-R.S. 15:529.1A(1). Thus, defendant was exposed to a minimum term of imprisonment of ten years and maximum term of imprisonment of forty years. The district court sentenced defendant to a lower-range sentence of fifteen years at hard labor without the benefit of probation of suspension of sentence.

At sentencing, the district court stated that it reviewed the sentencing factors listed in Article 894.1. The court found that there was an undue risk that defendant would commit another crime during a period of suspended sentence or probation and that defendant was in need of correctional treatment that could most effectively be provided by his commitment to an institution. The court also took judicial notice of defendant's February 2007 guilty plea to possession with intent to distribute cocaine, which was not used in the multiple offender bill of information.

Defendant complains that the district court summarily denied his motion to reconsider sentence, preventing him from demonstrating that the imposition of prison sentences for possession of marijuana in St. Tammany Parish is affected by

race.  In the motion to reconsider, defense counsel argued that a 2013 national study of marijuana prosecutions documented that marijuana laws are disproportionately enforced against persons of color and that she had a "good faith belief" based on her "professional experience in representing individuals who have been charged with possession of small amounts of marijuana and the study" that there is a corresponding disparity in the sentences imposed between St. Tammany and Orleans Parishes.  The report from the 2013 national study was attached to the motion.

Louisiana Code of Criminal Procedure article 881.1D provides authority for the district court to deny a motion to reconsider sentence without a hearing.  If the court denies the motion without a hearing, the party who made or filed the motion may proffer the evidence it would have offered in support of the motion.  Defendant does not indicate what additional evidence he would have submitted at a hearing on the motion, nor did he proffer any evidence in support of his motion to reconsider.

We find no abuse of discretion by the district court.  There is ample justification in the record for the fifteen-year sentence imposed on defendant, and a hearing on the motion to reconsider was not required.  Accordingly, the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not excessive.

This assignment of error is without merit.[29]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[30]

To the extent that petitioner is claiming that his sentence is excessive or otherwise inappropriate under *Louisiana* law, that claim is not cognizable in this federal proceeding.  Federal habeas corpus relief is available only to correct violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).  Accordingly, a federal habeas court will not review the legality of a petitioner's sentence under state law.  See, e.g., Nyberg v. Cain, Civ. Action No. 15-98, 2015 WL 1540423, at *12 (E.D. La. Apr. 7, 2015); Phillips v. Cain, Civ. Action No. 13-5868, 2014 WL 4425751, at *10 (E.D. La. Sept. 8, 2014), adopted, 2014 WL 5080246 (E.D. La. Sept. 26, 2014);

---

[29] State v. Bridges, No. 2014 KA 0777, 2015 WL 997162, at *9-10 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 5 of 6.
[30] State v. Bridges, 187 So.3d 467 (La. 2016); State Rec., Vol. 6 of 6.

Brunet v. Goodwin, Civ. Action No. 12-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013), adopted, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

On the other hand, to the extent that petitioner is claiming that his sentence is excessive under *federal* law, that claim obviously is cognizable; however, for the following reasons, it is also meritless.

The United States Supreme Court has held that that "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." Rummel v. Estelle, 445 U.S. 263, 271 (1980). However, over the last few decades, the Supreme Court's jurisprudence concerning excessive sentence claims has been in flux, with the various justices unable to speak with one voice on the law. In fact, in 2003, the Supreme Court noted that a federal habeas court's charge to determine what constitutes clearly established federal law for the purposes of analyzing an excessive sentence claim was no easy task, given that the Supreme Court's jurisprudence concerning such claims had "not been a model of clarity." Lockyer v. Andrade, 538 U.S. 63, 72 (2003). In Lockyer, the Supreme Court ultimately concluded that the "only relevant clearly established law" with respect to an excessive sentence claim was "the gross disproportionality principle, the precise contours of which are unclear, applicable only in the exceedingly rare and extreme case." Id. at 73 (quotation marks omitted); see also id. at 72 ("Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality.").

The United States Fifth Circuit Court of Appeals has summarized its understanding of the Supreme Court excessive sentence jurisprudence as requiring federal courts to "initially make a threshold comparison of the gravity of [a prisoner's] offenses against the severity of his sentence." If, *and only if*, the court determines "that the sentence is grossly disproportionate to the offense," is the court to then "compare the sentence received to (1) sentences for similar crimes in the same

jurisdiction and (2) sentences for the same crime in other jurisdictions." McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

Further, in determining whether a claim is grossly disproportionate, the Court must be mindful of the following guiding principles:

First, in our federal system, the legislatures of the various states are empowered to articulate societal norms through their criminal laws and to fix the prison terms for specific crimes within their state, and federal courts are to afford the state's decisions on such matters substantial deference. See, e.g., Solem v. Helm, 463 U.S. 277, 290 (1983) ("Reviewing courts … should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes …."); United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) ("[T]he determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts."); cf. Weems v. United States, 217 U.S. 349, 379 (1910) ("[T]here is a certain subordination of the judiciary to the legislature. The function of the legislature is primary, its exercise fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of its wisdom or propriety. They have no limitation … but constitutional ones ….").

Second, it is permissible for the various states to deal "in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." Rummel, 445 U.S. at 276. In fact, the United States Supreme Court jurisprudence establishes "that 'States have a valid interest in deterring and segregating habitual criminals.' Recidivism has long been recognized as a legitimate basis for increased punishment." Ewing v. California, 538 U.S. 11, 25 (2003) (plurality opinion) (quoting Parke v. Raley, 506 U.S. 20, 27 (1992)). Therefore, the states clearly may impose enhanced

sentences on recidivists, and "the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction." Rummel, 445 U.S. at 285.

Third, at the time of petitioner's offense, Louisiana law provided that the crime of possession of marijuana, third offense, was punishable by up to twenty years imprisonment. However, because he was charged and adjudicated as a second-felony offender under Louisiana's habitual offender law, he was subject to a minimum term of imprisonment of ten years and maximum term of imprisonment of forty years. He was in fact sentenced on the low end of that range, with the court imposing a fifteen year sentence.

Fourth, although this federal habeas Court may vacate that state sentence if it is "grossly disproportionate to the severity of the crime," "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." Id. at 271-72.

With these considerations in mind, the undersigned finds that petitioner's sentence, though harsh, is not so grossly disproportionate as to violate the Eighth Amendment for the following reasons.

At first blush, petitioner's fifteen-year sentence for possession of marijuana might strike one as egregious. However, it must be remembered that the sentence was not based solely on that offense; rather, it was enhanced under Louisiana's habitual offender law based on petitioner's status as a second-felony offender. Clearly, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992). Moreover, while

one might well question the "wisdom, cost-efficiency, and effectiveness" of draconian habitual offender laws, such concerns are not appropriately considered by a federal court in assessing the excessiveness of a state sentence.  Rather, criticisms of habitual offender laws are "appropriately directed at *the legislature*, which has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme.  *We do not sit as a 'superlegislature' to second-guess these policy choices*."  Ewing v. California, 538 U.S. 11, 25 (2003) (plurality opinion) (emphasis added).

Further, the United States Fifth Circuit Court of Appeals has held that the Supreme Court's Rummel decision established "a benchmark for disproportionate punishment under the Eighth Amendment."  United States v. Gonzales, 121 F.3d 928, 943 (5th Cir. 1997).  In Rummel, the petitioner had been sentenced to life imprisonment for obtaining $120.75 under false pretenses, an enhanced recidivist sentence which also took into account his prior convictions for fraudulent use of a credit card and passing a forged check.  The Supreme Court held that the life sentence imposed under those circumstances was constitutional.  In light of that ruling, the Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law.  *Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.*

Gonzales, 121 F.3d at 943 (footnote omitted; emphasis added)

Here, petitioner's fifteen-year sentence fell on the low end of the applicable sentencing range provided under Louisiana law at the time.  Although some persons might not consider this instant crime, possession of marijuana, third offense, to be particularly serious, it is at least as serious as the negligible property crimes in Rummel.  Moreover, petitioner's criminal history was clearly more concerning than that in Rummel, in that petitioner was charged as, and admitted to

being, a second felony offender based on a predicate conviction of sexual battery, a grave crime for which he received a five year sentence.[31]  In light of those considerations, as well as the finding in Rummel that a *life* sentence was not excessive for the relatively minor offenses involved in that case, this Court cannot conclude that petitioner's sentence fifteen-year sentence is grossly disproportionate under federal law.  Because the sentence is not grossly disproportionate, this Court's "inquiry is finished."  Gonzales, 121 F.3d at 942.  Accordingly, this claim should be denied.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Dwight A. Bridges be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[32]

New Orleans, Louisiana, this fifth day of April, 2018.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[31] The trial court also noted that petitioner also had another serious conviction, possession with intent to distribute cocaine, which was not charged in the multiple bill of information.

[32] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.