**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DWIGHT A. BRIDGES | CIVIL ACTION |
| VERSUS | NO. 17-1925 |
| ROBERT TANNER, WARDEN | SECTION: "E"(1) |

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   APR 19 2018
WP
WILLIAM W. BLEVINS
CLERK

## PETITIONER'S OBJECTION TO THE MAGISTRATE'S RECOMMENDATION

Petitioner Dwight A. Bridges objects to the recommendation of United States Magistrate Judge Janis Van Meerveld that petitioner's federal application for habeas corpus relief be dismissed with prejudice. This timely filed written objection to the proposed findings, conclusions, and recommendations preserves the petitioner's right to attack on appeal the proposed factual findings and legal conclusions accepted by the district court.

## PROCEDURAL HISTORY

Petitioner Dwight A. Bridges is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana. On September 18, 2013 he was convicted of possession of marijuana, third offense, under Louisiana law. On December 16, 2013, he was adjudicated a second-felony offender and sentenced as such to a term of fifteen years imprisonment without benefit of probation or suspension of sentence. On March 6, 2015, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication and sentence. The Louisiana Supreme Court then denied his related writ application on February 26, 2016.

On February 21, 2017, petitioner filed the instant federal application seeking habeas corpus relief. The state has filed a response conceding that the application is timely but arguing that relief should nonetheless be denied. Petitioner filed a reply to the state's

TENDERED FOR FILING

APR 19 2018

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

1

Fee _____
Process_____
X  Dktd_____
CtRmDep _____
Doc. No._____

response.  On April 5th, 2018, the Magistrate Judge for the Eastern District of Louisiana filed a report and recommendation that the federal application for habeas corpus relief filed by Dwight A. Bridges be dismissed with prejudice.   This objection to the Magistrate's Recommendation timely follows.

## **Standard of Review under 28 U.S.C. 2254**

Generally, an inmate in state custody pursuant to the judgment of a state court must seek redress in the federal system by filing a petition for habeas corpus relief under 28 U.S.C. § 2244 et seq., the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). That statute, as amended by Congress in 1996, places exacting burdens on petitioners seeking such relief, both in terms of the procedural propriety and substantial merit of their claims.  Section 2254 provides:

> "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

> "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The  United  States  Supreme  Court  has  made  clear  that  the  "unreasonable application" prong of section 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts" of petitioner's case.  Williams v. Taylor, supra, at 413, 120 S.Ct. 1495; see also Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).  In other words, a federal court may grant relief when a

2

state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." Lockyer v. Andrade, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citing Williams v. Taylor, supra, at 407, 120 S.Ct. 1495). In order for a federal court to find a state court's application of United States Supreme Court's precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous. See Lockyer, supra, at 75, 123 S.Ct. 1166. The state court's application must have been "objectively unreasonable." See, Williams v. Taylor, 529 U.S., at 409, 120 S.Ct. 1495.

### Petitioner's Claims

### A. Batson Challenge

Petitioner Bridges objects to the determination by the Magistrate that he has failed to meet his burden to establish that the state court's ultimate conclusion that the strikes were not racially motivated was unreasonable. In the Report and Recommendation filed by Judge Van Meerveld, the Court claims that petitioner offered no clear and convincing evidence of a discriminatory motive. To the contrary, Bridges asserts that his rights were violated in a clear and demonstrative manner that is supported by both the official record and decades of state and federal jurisprudence.

In his application for writ of habeas corpus, petitioner asserts that the lower court erred in denying his Batson challenges, thereby allowing the State to exclude potential jurors based on race. Batson v. Kentucky, 476 U.S. 79 (1986). As stated by the Magistrate, petitioner argues that his constitutional rights were violated when the prosecutor exercised his peremptory challenges in a racially discriminatory manner.

3

Since a <u>Batson</u> challenge is a mixed question of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."   <u>28 U.S.C. § 2254(d)(1)</u>. The question upon review centers on whether or not the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  In petitioner's case, the state court's application of legal principles must have been "objectively unreasonable".

***Batson and Miller-El Principles***

Under <u>Batson</u>, there is three-part process for evaluating claims that the prosecutor used peremptory challenges in violation of the equal protection clause: (1) the defendant must make a *prima facie* showing that a peremptory challenge has been exercised on the basis of race, (2) if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question, and (3) in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S. Ct. 1029, 1035, 154 L. Ed. 2d 931 (2003) (<u>Miller-El I</u>).

The Supreme Court has said that more powerful than bare statistics in analyzing a Batson claim "are side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve." <u>Miller-El v. Dretke</u>, 545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005) (<u>Miller-El II</u>). The Court in <u>Miller-El II</u> granted habeas relief on a <u>Batson</u> claim because the State's given reasons for striking two black jurors were demonstrably undermined by the fact the State did not strike white panel members who gave similar responses.

4

The Fifth Circuit recently granted habeas relief based on a similar comparative analysis, after a detailed review of the Miller-El decisions. Reed v. Quarterman, 555 F.3d 364 (5th Cir. 2009). The Reed decision listed three principles that should guide such an analysis. First, the court does not need to compare jurors who exhibit all of the exact same characteristics. "If the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, this is evidence that the asserted justification was a pretext for discrimination, even if the two jurors are dissimilar in other respects." Reed, 555 F.3d at 376.  "Second, if the State asserts that it was concerned about a particular characteristic but did not engage in meaningful voir dire examination on that subject, then the State's failure to question the juror on that topic is some evidence that the asserted reason was a pretext for discrimination." Id. "Third, we must consider only the State's asserted reasons for striking the black jurors and compare those reasons with its treatment of the nonblack jurors."  Id.

The Supreme Court recently reversed a conviction, on review of a direct appeal, after conducting a similar comparative analysis. Snyder v. Louisiana, 552 U.S. 472, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008). The Court acknowledged that, on appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. Id. at 1207.  The Court nonetheless reversed the conviction because the prosecutor's stated reasons for striking two black jurors did not pan out when compared to similar facts surrounding white panelists the prosecution did not strike.

The analysis was also applied in other Fifth Circuit decisions. See Hayes v. Thaler, 361 Fed. Appx. 563, 2010 U.S. App. LEXIS 1152, 2010 WL 183395 (5th Cir. Jan. 19, 2010) (reversing trial court and granting habeas relief on a Batson claim after conducting

5

comparative analysis) and <u>Wade v. Cain</u>, 372 Fed. Appx. 549, 2010 U.S. App. LEXIS 7402, 2010 WL 1427372 (5th Cir. Apr 9, 2010) (affirming denial of habeas after conducting comparative analysis).

### *Analysis of the Batson Claims*

The Fifth Circuit stressed in <u>Reed</u> that the comparative analysis rests on the entire voir dire transcript, even when the petitioner does not explicitly point to particular voir dire. Petitioner Bridges submits a claim extremely similar to that presented in <u>Miller-El</u> and <u>Reed</u>, and the courts conducted a full comparative analysis in those cases before granted habeas relief. Accordingly, petitioner claims that a review of the entire voir dire transcript presents clear facts upon which his Batson claim can be sustained.

### *Batson Step One*

The Magistrate Court found that Bridge's <u>Batson</u> claim should be rejected because it did not satisfy <u>Batson's</u> three-step process. While the trial judge did not expressly find that a *prima facie* case had been established, the Magistrate acknowledges that the Court did so implicitly by requiring the prosecutor to state his reasons for his challenges. This acknowledgment satisfied the first step of a <u>Batson</u> review by rendering the question moot. <u>United States v. Broussard</u>, 987 F.2d 215, 220 n. 4 (5th Cir. 1993).

### *Batson Step Two*

The second step requires that, once a *prima facie* case has been established, the proponent of the strike must come forward with a race-neutral explanation for his decision to cut the jurors. The trial judge tacitly found that a *prima facie* case had been established and correctly shifted the burden to the prosecutor to provide a race-neutral reason for his decision to cut the two ladies, as required by the second-step of the <u>Batson</u> analysis.

Counsel for Mr. Bridges raised a <u>Batson</u> challenge after the prosecutor used peremptory challenges to strike two of the three African-Americans in the twenty-three person venire sent to Division "H" for his trial. (Trans. p. 606).

The prosecutor, Mr. Noriea, stated that he cut Juror #309, Ms. Mary White, because she "was on two juries, and they were both defense verdicts, one was civil and one was criminal." (Trans. p. 606). His explanation for exercising a completely unanticipated backstrike against Juror #60, Ms. Alice Cousin, was that she "is a retired teacher's aid and I've never had any luck with teacher's aides." (Trans. pp. 606-607).

In contesting Mr. Noriea's explanation, counsel pointed out that: 1) Ms. White had not said that she had voted "not guilty" in a criminal case as represented by Mr. Noriea; in reality, she reported with regard to the criminal case, "...they ended up settling before we actually went to trial." (trans. p. 542); and 2) though the prosecutor claimed he struck Ms. Cousin because she had been a teacher's aid, he had accepted a white woman, Ms. Erin Worrel (Juror #321) who was currently employed as a teacher's assistant. (Trans. pp. 530, 67-609). Counsel also voiced concern that Mr. Noriea cut Ms. Cousin by an unanticipated backstrike after having previously accepted her as a juror.

Following the remarks of both counsels, the trial court again noted that defense counsel had not specifically inquired about backstrikes and then continued, "I find that based upon the information that Mr. Noriea has presented, that he has provided a sufficient explanation for the strike of Ms. White. However, I will not allow the strike of Ms. Cousin." (Trans. p. 609)

When the prosecutor exercised his one peremptory challenge to remove Juror # 80, Ms. Shannon Doughty, as the alternate juror, he removed the only other prospective

African-American juror who had been called into Division "H" for Mr. Bridges' trial and defense counsel made a second <u>Batson</u> challenge. (Trans. p. 612).  He then continued to state that Ms. Doughty had expressed similar negative feelings about third possession of marijuana being a felony as had Mr. Fontenette and Ms. Thompson (who were white and the last two prospective jurors on the venire list) and said that if he had gotten to them (which would have been impossible), he would have cut them also.  He then pointed out that he had also cut Ms. Julie Young, who was white, for the same response.  The trial court found the prosecutor's explanation was "racially neutral" and allowed Ms. Doughty to be removed from the jury. (Trans. p. 613).

Though a trial court's <u>Batson</u> rulings are to be afforded great deference by a reviewing court (<u>State v. Juniors</u>, 915 So.2d 291, 316 (2003), in this case, the trial court's rulings which allowed the exclusion of Ms. White and Ms. Doughty were clearly erroneous given the totality of the circumstances in this case.[1]

Finally, the prosecutor's race neutral explanation concerning Ms. White must be evaluated in light of his inconsistent conduct with regard to that explanation. The Supreme Court has explicitly recognized the importance of such comparisons, writing in <u>Miller-El</u> <u>Dretke</u>, 545 U.S. 231 (2005):

> More powerful...are side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve.  If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step. *Id.* at 241.

---

[1] The clearly erroneous standard was articulated in <u>Hernandez v. New York</u>,  500 U.S. 352, 364 (1991); <u>State v. Elie</u>, 936 So.2d 791, 795 (2006).

The trial court failed to follow Miller-El.  Though on its face, the reason given by the prosecutor for excluding Ms. Doughty as an alternate juror was race neutral, the challenge cannot be viewed in a vacuum.

The Magistrate contends that, at this step of the inquiry, the only issue is the *facial validity* of the prosecutor's explanation.  Under this standard of review, a discriminatory intent must be *inherent* in the prosecutor's explanation, otherwise the reason offered will be deemed race-neutral.  If this line of reasoning is extended to its logical conclusion then there would be no need for a judge to ever question a backstrike.  In other words, *any* reason given by the prosecution would be deemed acceptable.  However, that is not the way that Batson has been interpreted in the past.  In this case, the constantly changing and wildly inaccurate representations of the jurors' past jury participation by the prosecutor cannot be considered valid on their face.  If the challenges were not marred by significant discrepancies like whether or not a potential juror actually voted guilty or not, perhaps they would be valid.  The reality is that Mr. Noriega was willing to accept a juror that voted guilty or not guilty or that was a teacher's aide or not.  What he apparently was not willing to accept was an African American juror.

***Batson Step Three***

In performing the third step of the Batson analysis, a trial court is required to critically examine the prosecutor's explanation and not just take whatever explanation he offers at face value.  Had the court presiding over Mr. Bridges' trial performed a Miller-El comparison—rather than perfunctorily accepting the prosecutor's very disrespectful reference to Ms. Doughty when compared with how he referred to the white jurors who

expressed stronger views than hers, it would have been bound to find that, more likely than not, impermissible racial discrimination was involved in excluding Ms. Doughty.

Mr. Bridges' case had overt racial overtones; the defense raised its <u>Batson</u> objections in a timely manner; the racial makeup of the jury does not negate a discriminatory intent on the part of the prosecutor and the trial judge did not consider any circumstances other than the stated reason given by the prosecutor.  As the Supreme observed in <u>Johnson</u>, quoting from other cases, "[I]t does not matter that the prosecutor might have had good reasons...[w]hat matters is the real reason they [jurors] were excluded." <u>Id.</u> at 172. Had the trial court in Mr. Bridges' case considered all the relevant circumstances surrounding the striking of Ms. White and Ms. Doughty—and not just what the prosecutor said—especially in light of the court's reinstating Ms. Cousin to the jury after tacitly finding her removal to be racially motivated, it would have concluded that the reasons given for the exclusion of the two ladies were either "not legitimate or pretext."

The constitutional violation arising from the discriminatory exercise of peremptory challenges is not rectified by "splitting the baby" because in making a <u>Batson</u> challenge, "the defense is protecting the constitutional rights of both the defendant and the excluded juror..." <u>State v. Bender</u>, 120 So.3d 867, 871 (2013).  As a result, the ruling of the trial court on the defendant's <u>Batson</u> challenges was clearly erroneous and his conviction should be reversed.

### *Habeas Standard of Review*

The federal district court presumes the Louisiana court's factual findings to be sound unless Petitioner rebuts the "presumption of correctness by clear and convincing

evidence." Section 2254(e)(1). The standard is "demanding but not insatiable," and "deference does not by definition preclude relief." <u>Miller-El</u>, 125 S. Ct. at 2325.

The federal court would have to ignore the comparative analysis to uphold the finding of no discrimination. Furthermore, there was no statement by the prosecutor or finding by the trial judge that would overcome the effect of that analysis. As in <u>Miller-El</u>, a review of the entire voir dire and a comparison of how similarly situated black and white panel members were treated "supports a conclusion that race was significant in determining who was challenged and who was not." <u>Miller-El</u>, 125 S. Ct. at 2332.

### *The Magistrate's Analysis of the Claim is Unreasonable*

Despite the presumption of correctness, the Magistrate's finding that the prosecutor gave a credible race-neutral reason for striking the jurors was an unreasonable determination of the facts in light of the evidence presented. The findings with respect to the strikes of prospective black jurors have established a <u>Batson</u> violation. A finding of <u>Batson</u> error with respect to only one juror would require relief from the conviction. <u>Snyder v. Louisiana</u>, 128 S. Ct. at 1208. Accordingly, Petitioner is entitled to habeas relief on the claim. In the instant case, petitioner has clearly met his burden to establish that the court's conclusion that the strikes were not racially motivated was unreasonable.

### B. Denial of Right to Present Defense

Petitioner Bridges objects to the determination by the Magistrate that his federal constitutional rights were not violated when the trial court denied him the opportunity to present his defense. The court thus prevented petitioner from presenting the only direct, dramatic, and definitive proof he had: that the testimony given by St. Tammany Parish deputies called as state witnesses was incredible.

11

By virtue of the United States Constitution, any individual accused of a crime is guaranteed a right to present evidence tending to negate his guilt.  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  (Citations within quotation omitted) Crane v. Kentucky, 476 U.S. 685, 689-690 (1986) quoting California v. Trombetta, 467 U.S. 479, 485 (1984).

The fundamental right "to present a defense" is also ensconced in Louisiana constitutional law.   La. Const. Art. I § 16. The Louisiana Supreme Court has clearly recognized that "It is difficult to imagine rights more inextricably linked to our concept of a fair trial,  State v. Van Winkle, 658 So.2d 196, 202 (1995). Because of this fact, the Court has declared that evidentiary rules may not supersede the fundamental right to present defense and it has not hesitated to overturn convictions in cases where a criminal defendant has not been allowed to present evidence at trial in support of his defense theory.

Petitioner Bridges sought to recreate the conditions of the traffic stop in an effort to show that what the officers claimed to have discovered by smell was impossible. The State's case against Mr. Bridges rested entirely on the credibility of three St. Tammany law enforcement officers. Two deputies claimed they stopped Mr. Bridges for speeding. One then claimed that he smelled raw marijuana while standing outside the closed passenger window of his car.  Mr. Bridges was removed from the vehicle and the deputies called a canine unit that, according to Canine Unit Deputy Olivier, routinely went to vehicle stops in St. Tammany Parish.  He testified that, after arriving with his dog, he located a small

12

amount of marijuana in the open glove compartment of the car, contrary to Deputy Stone's testimony that the glove compartment was closed when he called the canine unit.

The defense theory of the case was that the testimony of the three St. Tammany Parish Deputies could not constitute proof beyond a reasonable doubt because; 1) they contradicted each other on important points,  2) some of their described conduct (such as looking in the glove compartment and not searching the rest of the car or the trunk) was inherently illogical and, most significantly, 3) their claim of smelling raw marijuana, given the particular circumstances they alleged, was incredible.  Counsel for Mr. Bridges clearly articulated this defense in his opening statement, telling the jury:

> "...more significantly, you are going to be concerned about the inconsistencies that you are going to hear, and you are going to hear, and you are going to be troubled by contradiction.  On top of that, you are going to be disturbed by an allegation that is impossible.  As a result of all of that, Ladies and Gentlemen, you will not be convinced that the State has borne its burden and proven beyond a reasonable doubt that Mr. Bridges possessed marijuana that night...."(Trans. pp. 642-643)

The contradictions in the deputies' individual testimony and the facts upon which to argue that their reported course of conduct was inherently illogical could be elicited and highlighted through cross examination. In contrast, the impossibility of their alleged ability to smell an extremely small amount of raw marijuana under the circumstances they described, could only be demonstrated by having the jurors stand in the exact position that Deputy Stone and Deputy Ripoll had placed in the closed glove compartment wrapped as they said it was on January 5, 2013.  Once able to effectively demonstrate the impossibility of the deputies' allegation, the defense would be able to effectively argue that the combination of inconsistent testimony, inherently illogical police action and proven untruthfulness on a critical point constituted reasonable doubt that Mr. Bridges actually

13

possessed any marijuana on January 5, 2013, and therefore the jury was compelled to return a verdict of "not guilty".

"The standard for determining relevance is based on logic and experience." State v. Caldwell, 504 So.2d 853 (1987).  As long as the evidence has a tendency to make a consequential fact more or less probable, the logical relevancy test is satisfied.  Clearly, evidence attacking the credibility of Officer Stone's testimony that he could smell 1.86 grams of raw marijuana wrapped in plastic and enclosed in the 8" by 11" folded paper receipt from a money order in the closed glove compartment of Mr. Bridges' car while he was standing outside the closed, front passenger window was relevant.  It would have a direct bearing on the jury's decision whether to believe that he testified truthfully about other aspects of the case, particularly: stopping Mr. Bridges for speeding—when there was no corroborating evidence to support the charge and Mr. Bridges was never prosecuted for the offense—and, significantly, whether the de minimus amount of marijuana in question was actually in Mr. Bridges' vehicle on January 5, 2013.

Without the jury being able to see for itself—by standing next to the closed passenger window with the State's evidence placed in the glove compartment as the officer said he found it on January 5, 2013—that the officer's testimony was completely incredible, defense counsel was prevented from both presenting a "complete defense" for Mr. Bridges challenging the truthfulness of the police testimony and from effectively arguing in closing that, since the police officers had not testified truthfully about a material fact, the jury was justified in disregarding their entire testimony.  The jury would then be required by law to find Mr. Bridges "not guilty" because without the disregarded police testimony, the State would have failed to prove his guilt beyond a reasonable doubt.

The defense request for the jury to exit the courthouse and stand next to Mr. Bridges' vehicle following the testimony by Tiara Shobe, that Mr. Bridges' blue Jaguar had been parked in the courthouse parking lot would not have unreasonably delayed the proceedings, would not have caused logistical problems and would not have violated any provision of the Code of Criminal Procedure.

Finally, the trial court's ruling that the defendant's request should be denied because jurors did not know what marijuana smelled like (Trans p. 721) was without merit. State witness Deputy Ripoll, who was at the driver's side window, testified that he did not know what marijuana smelled like but detected an "odd smell." Jurors would have been equally able to do so if, in fact, it was possible for any odor to escape from the small sealed package of marijuana allegedly located in the car's closed glove compartment.  In addition, as both the exact car and exact marijuana and wrapping were present, whether the existence of any odor could be detected would not be affected by the fact the car was in the courthouse parking lot instead of on the highway where the stop occurred. The court's ruling precluded the defense from presenting the only direct, dramatic and definitive evidence it had to prove that the arresting deputies' testimony was not credible.  As such, the lower court's ruling improperly prevented Mr. Bridges from presenting his defense to the jury and constituted reversible error.

### *The Magistrate's Analysis of the Claim is Unreasonable*

The First Circuit Court denied this claim because of the concerns expressed by the District Court, including the passage of time, inability to recreate the conditions existing on the night of the incident, and the possibility that jury members would not be able to identify the scent of marijuana.

15

As discussed above, State witness Deputy Ripoll, who was at the driver's side window, had testified that he did not know what marijuana smelled like but detected an "odd smell." The type of car Mr. Bridges was driving on the night of the incident was a late model Jaguar. The craftsmanship of these luxury vehicles does not allow for the seepage of odd smells to escape its interior. Had the Court allowed the jurors to stand outside the Jaguar with the marijuana inside the same glove compartment with the window rolled up, jurors would have been equally able to smell the odd odor, if in fact it was possible for any odor to escape from the small sealed package of marijuana allegedly located in the Jaguar's closed glove compartment behind the sealed passenger side window. In addition, as both the exact car and exact marijuana and wrapping were present at trial, whether the existence of any odor could be detected would not be affected by the fact the car was in the courthouse parking lot instead of on the highway where the stop occurred. Thus, the Magistrate's analysis of this claim was unreasonable.

### C. Testimony and Argument Concerning Petitioner's Refusal to Consent to the Search of the Vehicle

Petitioner Bridges objects to the determination by the Magistrate that his Fourth Amendment rights were not violated by the prosecutor's elicitation of testimony that he refused to consent to the search of the vehicle and by the prosecutor's comment on that refusal during closing argument. Bridges objects on the grounds that this was an impermissible inquiry into his invocation of his Fourth Amendment right not to consent to a search, and he now argues that this question requires reversal of his convictions.

The trial judge's actions in allowing a line of questioning that equated a lack of cooperation with the invocation of a fundamental constitutional right to have a search

performed according to the law have been held by several circuit courts, including the Fifth

Circuit Court of Appeals to be general impermissible.  In <u>United States v. Runyan</u>, 290 F.3d

223 (5th Cir. 2002), the Fifth Circuit noted:

> This circuit has not directly addressed the question whether a prosecutor commits constitutional error by invoking a defendant's refusal to consent to a warrantless search to support an inference of guilt. However, the circuit courts that have directly addressed this question have unanimously held that **a defendant's refusal to consent to a warrantless search may not be presented as evidence of guilt.** *See, e.g., United States v. Moreno*, 233 F.3d 937, 940-41 (7th Cir. 2000); *United States v. Dozal*, 173 F.3d 787, 794 (10th Cir. 1999); *United States v. Thame*, 846 F.2d 200, 205-08 (3d Cir. 1988); *United States v. Prescott*, 581 F.2d 1343, 1351-52 (9th Cir. 1978); *but cf. United States v. McNatt*, 931 F.2d 251, 256-57 (4th Cir. 1991) (questioning whether a defendant's invocation of his or her Fourth Amendment rights by refusing to consent to a warrantless search is the constitutional equivalent of a defendant's invocation of his or her right to remain silent under the Fifth Amendment, but not reaching the issue). For the purposes of this appeal, we assume without deciding that it would be error of constitutional magnitude for a trial court to permit a prosecutor to comment on (or present testimony regarding) a defendant's refusal to consent to a warrantless search to support an inference of guilt.

As in the above referenced cases, Petitioner Bridges' rights were infringed upon

when his refusal to consent to a warrantless search was presented at trial as evidence of

guilt.

In <u>United States v. Cooper</u>, 714 F.2d 873 (5th Cir. 2013), the Court observed:

> We address Due Process concerns arising out of improper statements by the Government at trial using a two-step framework. We first assess whether the Government's statement was improper and then determine whether the statement "prejudiced the defendant's substantive rights." *United States v. Raney*, 633 F.3d 385, 394 (5th Cir. 2011) (quoting *United States v. Munoz*, 150 F.3d 401, 415 (5th Cir. 1998)).  "The prejudice determination involves '(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt.'" *Id*. at 394 (quoting *United States v. Tomblin*, 46 F.3d 1369, 1389 (5th Cir. 1995)).

Petitioner Bridges maintains that improper statements made by the Government at

trial were improper and clearly prejudiced his substantive rights.

*The Magistrate's Analysis of the Claim is Unreasonable*

The First Circuit denied this claim after finding the officers' testimony established that the officers detected the odor of marijuana and did not need to obtain Defendant's consent to search the vehicle. As discussed above, the impossibility of the officers' alleged ability to smell an extremely small amount of raw marijuana under the circumstances they described is incredible and less than candid and minus the Court's finding the officers' testimony to be credible, the officers would not have had probable cause to search Mr. Bridges' vehicle. Thus, the State Court's analysis of this claim was unreasonable.

## D. Daubert Hearing

Petitioner Bridges objects to the determination by the Magistrate that his rights were not violated by the trial court's refusal to hold a <u>Daubert</u> hearing. After stating that petitioner's request for a <u>Daubert</u> hearing as to the ability of the State's law enforcement witnesses to detect the odor of raw marijuana would be heard at a later time, the trial court erred in not subsequently allowing the hearing on the day of trial. The ground for denial stated by the Court was that the defense had not filed a written motion due to a reliance on the Court's earlier ruling. The Magistrate contends that <u>Daubert</u> does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution.

A claimed violation of <u>Daubert</u> does not equal a constitutional violation. <u>Id</u>. Thus, the standard of habeas review "is not whether the testimony satisfied the <u>Daubert</u> test, which does not set forth a constitutional rule on the admissibility of scientific evidence, but rather whether the wrongful admission of evidence rendered the trial fundamentally unfair." 2007 U.S. Dist. LEXIS 23463, [WL] at *14 (citations omitted). Further, "[a] trial is

18

fundamentally unfair only if the evidence played a 'crucial, critical, and highly significant role in the trial....'" Id. (quoting Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998), cert. denied, 526 U.S. 1118, 119 S. Ct. 1768, 143 L. Ed. 2d 798 (1999)).

The Magistrate has chosen to frame the question as a matter of whether the purported evidentiary error at issue "played a crucial, critical, and highly significant role in the trial."  In that context, a reasonable person would conclude that the denial of petitioner's Daubert hearing rendered the trial fundamentally unfair as the scientific matter of whether or not the smell of marijuana was detectable through a closed window of a vehicle was left unanswered for the jury.

If trial courts fail to do so, a driver's Fourth Amendment right to privacy will always be trumped by the unexamined, self-serving allegation of a law enforcement officer that he/she smelled marijuana.  The trial court's refusal to conduct a Daubert hearing on the officers' ability to detect the odor of raw marijuana after previously having told the defense it would do so constituted error. Merely requiring that the State offer evidence during the officer's trial testimony to support the introduction of such testimony as lay opinion testimony was not a sufficient alternative because it did not address the issue of whether it was scientifically possible for a human to detect the odor of an extremely small amount of raw marijuana sealed in plastic and placed in a closed glove compartment when the person was standing next to the closed passenger car window.

### The Magistrate's Analysis of the Claim is Unreasonable

The First Circuit found that the officer testified to the smell of marijuana based on his training and experience and was not presented in the form of an expert opinion. Thus, the Court concluded that no Daubert hearing was required.

A <u>Daubert</u> hearing was required in this case for a number of reasons. First, to ensure that officers allegations of smelling marijuana does not become routine; second, to ensure that drivers' Fourth Amendment right to privacy will not be trampled by unexamined, self-serving allegations of a law enforcement officer that he or she smelled marijuana; third, a Daubert hearing was particularly required to confront Deputy Ripoll's testimony where he testified that he was not trained or qualified to detect the smell of raw marijuana (Hr. Transcript pg. 465, line 3-8, May 22, 2013); and finally, a <u>Daubert</u> hearing was required to address the issue of whether it was scientifically possible for a human to detect the odor of an extremely small amount of marijuana sealed in plastic and placed in a closed glove compartment when the person was standing next to the closed passenger window of a late model jaguar.  Thus, the State Court's analysis of this claim was unreasonable.

### E. Habitual Offender Adjudication

Petitioner Bridges objects to the determination by the Magistrate that he was a second-felony habitual offender. Because Petitioner Bridges had not been individually "Boykinized" when he entered his guilty plea to the predicate offense listed in the multiple offender bill of information filed against him, the Magistrate incorrectly determined him to be a second offender under La. R.S. 15:529.1.

The transcript of the plea colloquy revealed that Mr. Bridges was one of nine defendants who entered a guilty plea in an *en masse* proceeding.  (12-16-13 Trans. p. 5) According to the transcript, the defendants were advised of their constitutional rights collectively as a group and then asked to respond to each question posed by the court one after the other, in sequence, when the judge called their name.

Such a procedure was not addressed, let alone sanctioned, in <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969). As conducted, a group plea does not constitute a meaningful "personal colloquy" between the judge and the accused. Boykin-critical questions are not individually posed to each person but are asked in general with each person asked to answer successively, as the judge goes down the list of defendants standing before her/him. This is especially the situation in a case like Mr. Bridges where the judge took the pleas of nine defendants to separate offenses at the same time.

The trial court rejected all three concerns raised by the defense and denied the motion to quash. (5-6-13 Trans. p. 792). Though the failure of an earlier trial court to inform a defendant of his right to post conviction relief and the possibility of sentence enhancement in the event of a future conviction have not been found to individually to constitute error sufficient to vacate a defendant's plea, the two errors combined with a group plea of nine defendants at the earlier plea rendered that proceeding defective and should have resulted in the quashing of the multiple bill filed against Mr. Bridges.

***The Magistrate's Analysis of the Claim is Unreasonable***

### F. Excessive Sentence

Petitioner Bridges objects to the determination by the Magistrate that his sentence is not excessive. By summarily denying Mr. Bridges' motion to reconsider sentence without a hearing and sentencing him to serve 15 years in prison for a third possession of a de minimus amount of marijuana under the second offender provision of La. R.S. 15:529.1, the lower court committed error and subsequently imposed a constitutionally excessive sentence.

As a federal issue considered under the AEDPA standard, an excessive sentence claim presents a question of law. Chatman v. Miller, No. 05-1481, 2005 U.S. Dist. LEXIS 36863, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); Davis v. Cain, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); Jones v. Kaylo, No. 99-0567, 1999 U.S. Dist. LEXIS 11456, 1999 WL 544680, at *1 (E.D. La. July 26, 1999). Therefore, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

A sentence within statutory limits will not be upset by a federal habeas court, unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991); Solem v. Helm, 463 U.S. 277, 291-92, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court will consider (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other jurisdictions. Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)); United States v. Gray, 455 F. App'x 448, 449 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010), cert. denied, 563 U.S. 998, 131 S. Ct. 2470, 179 L. Ed. 2d 1230 (2011).

Petitioner Bridges notes that Louisiana jurisprudence is rapidly evolving regarding criminal penalties for the possession of marijuana. If convicted today, petitioner would almost certainly receive a lesser sentence that the fifteen years that he is currently serving. In a May 2017 dissenting opinion, Louisiana Supreme Court Chief Justice Johnson commented on the excessive nature of a similar sentence:

22

I find it outrageous that defendant's conviction of possession of marijuana with intent to distribute, and sentence of 18 years imprisonment without benefit of parole, probation, or suspension of sentence, resulting from the discovery of a mere 18 grams of marijuana, will be allowed to stand. Considering the rapidly relaxing social attitudes toward the use of marijuana, the increasing number of states whose voters have approved the recreational use of marijuana, and changing laws (even in Louisiana) providing more lenient penalties relative to marijuana possession, the result of this case is even more ridiculous. By odd "coincidence," defendant was sentenced to 18 years in prison - exactly one year per gram of marijuana - a fact suggesting defendant's sentence was arbitrary rather than the result of careful consideration of the appropriate sentencing factors. As a practical matter, in light of the inconsequential amount of marijuana found, imprisoning defendant for this extreme length of time at a cost of about $23,000 per year (costing our state over $400,000 in total) provides little societal value and only serves to further burden our financially strapped state and its taxpayers.  State v. Howard, 226 So. 3d 419 (2017).

Justice Johnson's opinion, though in dissent, clearly states an "inference of gross disproportionality" enunciated in the above-referenced U.S. Supreme Court decisions.

In the motion to quash the multiple bill filed against Mr. Bridges, the defense argued that the sentencing range for a person convicted of possessing marijuana for a third time who was being sentenced as a second offender under La. R.S. 15:529.1 was excessive. On December 16, 2013, before imposing sentence on Mr. Bridges, the trial court voiced its thinking about the 10 to 40 year mandatory sentencing range that Mr. Bridges faced under the multiple offender statute which defense counsel contended was excessive by posing this question to her: "It's the law, though, isn't it?" (12-16-13 Trans. p. 9.)  In reply, counsel for Mr. Bridges advised the court of the Louisiana Supreme Court's decision in State v. Dorthey, 623 So.2d 1276 (1983), holding that even though perfectly legal, a sentence may nonetheless be constitutionally excessive as applied to a particular defendant. (Trans. p. 9) Counsel elaborated arguing:

> ... that really shocks the conscience, that someone could receive a sentence of 40 years [as a multiple offender for third offense possession of marijuana].  People

have injured people.  People have—we just heard on the news about the person who ran over four people in Texas and killed them; got probation.  I mean, the people have shot people.  People have done actual physical harm to people.

The other thing, your honor, you know, Judge,...I was thinking about this when I was in your court last week and someone was being sentenced to a third offense shoplifting.   For third offense shoplifting, which is a misdemeanor and enhanceable, for third offense shoplifting, goes [from zero to two years.  Now, there you are stealing something that belongs to someone else.  For third offense marijuana, in which arguably it could be said you are violating the law as it stands in Louisiana, you are certainly not causing harm to any other individual if you are not operating your vehicle or doing something where you might be intoxicated, and for that, the sentence is zero to twenty years.

So it makes no sense of how you could steal from someone, be it a store or a person, the third time you are stealing from them and get only up to two years, but you could smoke marijuana, or not even smoke it, have it in your glove compartment, a small amount which was the fact in this case, and receive a sentence from zero to 20 years.

Defense counsel then concluded by pointing out that the issue under Article I, Section 20 of the Louisiana Constitution was not limited to a "cruel and unusual punishment" but included a prohibition against an "excessive" sentence which the potential penalty range for possession of third offense possession of an extremely small amount of marijuana was.  The trial court failed to address the issue of excessiveness and denied the defendant's motion to quash the multiple offender bill, finding that the sentencing exposure range was not cruel or unusual (12-16-13 Trans. pp. 11-12). The defense objected to this ruling.

After the court sentenced Mr. Bridges to serve 15 years in the custody of the Department of Corrections (which means that he will have to serve 15 flat years, day for day), the trial court acknowledged Louisiana Code of Criminal Procedure Article 894.1 in general terms referencing sections (1) and (2) but articulated no facts supporting its reliance on these sections other than that Mr. Bridges also had a previous conviction for

possession of a small amount of cocaine. The defense objected to the sentence and on January 8, 2014, filed a motion to reconsider sentence under the provisions of Louisiana Code of Criminal Procedure Articles 881.1 and 881.2.

In the motion, the defense reurged its <u>Dorthey</u> objection to the mandatory sentencing range for the offense under La. R.S. 15:529.1 and also argued that—as supported by the report attached to the motion—a black person in St. Tammany Parish was 3.2 times more likely than a white person to receive a jail sentence for possession of marijuana. Counsel also raised the issue as to whether black defendants charged with drug offenses in St. Tammany Parish were given the same alternative sentencing options as whites, especially since Mr. Bridges never once received probation or drug treatment but instead, received a jail sentence for every one of his possession of marijuana offenses, even though each one involved only a small amount of marijuana. On January 9, 2013, the trial court summarily denied the motion to reconsider sentence without affording Mr. Bridges a hearing at which he would have had the opportunity to present evidence in support of his allegations. When counsel appeared in Division "H" on February 10, 2014, for a pretrial conference in Mr. Bridges' other marijuana case (no. 532332), counsel noted an objection to the court's January 9, 2014 ruling.

A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. <u>State v. Fuller</u>, 975 So.2d 812, n.1 (2nd Cir. 2008). Because the trial court denied Mr. Bridges a hearing on his motion to reconsider sentence at which he could have presented evidence in support of the allegations contained in the motion, he was denied the opportunity to demonstrate that the imposition of prison sentences for

25

marijuana in St. Tammany Parish is affected by the defendant's race. In addition to this error, the 15 year sentence imposed upon Mr. Bridges for the third possession of a small amount of marijuana meets the test for excessiveness. It is "grossly disproportionate" because, "when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice." State v. Weaver, 805 So.2d 166 (2002).

### The Magistrate's Analysis of the Claim is Unreasonable

The First Circuit denied this claim after finding ample justification in the record for the fifteen-year sentence imposed on defendant, and a hearing on the motion to reconsider was not required. Accordingly, the Court held that the sentence imposed was not grossly disproportionate to the severity of the offense and, therefore, is not excessive. State v. Bridges, 2015 La. App. Unpub. LEXIS 109, 2014 KA 0777, (La. 1st Cir. 3/6/2015).

In an identical case, State v. Ladd 192 So.3d 235, the defendant argued that the sentence of seventeen years was excessive for possession of marijuana, third offense. The Fourth Circuit Court of Appeals noted that the record was completely void of any evidence that the trial court either ordered a PSI or gave the defendant an opportunity to present any mitigating factors to substantiate his claim for a downward departure from the statutory minimum sentence. Furthermore, the Court found that the trial court should have allowed the defendant to argue his basis for such a downward departure before resentencing defendant on remand. The Court remanded the matter to the trial court to conduct an evidentiary hearing on his motion to reconsider the defendant's sentence. State v. Ladd, 192 So.3d 235 (La. 4th Cir. 4/13/2016).

In the instant case, the Court should have also granted Mr. Bridges' motion to reconsider sentence and allowed him an opportunity to argue his basis for a downward

departure.   Because the lower court denied Mr. Bridges an opportunity to argue a downward departure, this federal court should remand Mr. Bridges' case, like the Fourth Circuit remanded Ladd's case.

The Louisiana Supreme Court offered a complimentary view in Ladd's case that fits Bridges' case.  The Court stated "The laws nationwide are changing, as is public perception. [ ], [Ladd] would conceivably be in his forties before he is released. Although [Ladd's] seventeen year sentence is within the range of permissible sentences, on its face, the sheer harshness of the sentence shocks the conscience. We therefore find that further consideration of a downward departure from the mandatory minimum sentence is warranted. This result is clearly within the intent and spirit of Dorthey and subsequent jurisprudence." State v. Ladd, 192 So.3d 235 (La. 4th Cir. 4/13/2016).

Furthermore, the Court found that "La. R.S. 15:529.1, dramatically limits judges' ability to consider the human element and the life-time impact of harsh sentences on both defendants and their families, not to mention the State's economic interest. Sentences should be sufficient but not greater than necessary to meet the goals and expectations of sentencing. Is it deterrence? Is it punitive? Far too much authority has been usurped from judges under the pretext of appearing "tough" on crime and allowing the habitual offender statute to become what now appears to be an archaic draconian measure. Our State, Louisiana, has some of the harshest sentencing statutes in these United States. Yet, this State also has one of the highest rates of incarceration, crime rate and recidivism. It would appear that the purpose of the habitual offender statutes to deter crime is not working and the State's finances are being drained by the excessive incarcerations particularly those for non-violent crimes."

27

Likewise, in the present case, Mr. Bridges is a non-violent offender who was convicted for possessing a minute amount of marijuana; his prior convictions were also for possession of minute amounts of marijuana.  Although his fifteen year sentence is permissible under the law and statutory mandate, the harshness of his sentence on a third offense marijuana conviction shocks the conscience.  Therefore, the Magistrate's analysis on the excessiveness of Mr. Bridges' sentence is unreasonable.

## CONCLUSION

Petitioner Dwight Bridges has demonstrated that he is entitled to relief on all of his claims.  Further, he has demonstrated that the state court's decision rejecting  his claims was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.  Petitioner Bridges thus submits this Petitioner's Objection to the Magistrate's Recommendation to this Honorable Court.  By doing so, he preserves his right to challenge on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.

Angie, Louisiana, this __18__ day of __April__, **2018**.


_____
**Dwight Bridges #488052**

28



US POSTAGE >> PITNEY BOWES

ZIP 70426 $ 002.05⁰
02 4W
0000356989 APR 18 2018

DWIGHT BRIDGES(182052)
RCC
27268 Hwy 21 North
ANGIE, La. 70426

CLERK pro SE; Unit
UNITED STATES DISTRICT COURT
Room C-151
500 POYDRAS STREET
NEW ORLEANS, La. 70130