UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DWIGHT A. BRIDGES,<br>　　Plaintiff | CIVIL ACTION |
| VERSUS | NO. 17-1925 |
| ROBERT TANNER, WARDEN,<br>　　Defendant | SECTION: "E" |

## ORDER AND REASONS

Before the Court is a Report and Recommendation issued by Magistrate Judge Janis van Meerveld recommending that Petitioner Dwight A. Bridge's petition for federal habeas corpus relief be dismissed with prejudice.[1] Petitioner objects.[2] For the reasons that follow, the Court adopts the Report and Recommendation as its own and hereby **DENIES** Petitioner's application for relief.

## BACKGROUND

Petitioner is currently incarcerated at the Rayburn Correctional Center in Angie, Louisiana. On January 5, 2013, Petitioner was stopped for exceeding the speed limit.[3] During the traffic stop, the officer smelled marijuana and asked to search the vehicle.[4] Petitioner declined.[5] The officer called a K-9 unit, which detected narcotics in the glove compartment.[6] The officer searched the glove compartment and found contraband that tested positive for marijuana.[7]

---

[1] R. Doc. 12. This Order refers to documents on this Court's CM/ECF docket as "R. Doc. [#]" and refers to the record before the Louisiana First Circuit Court of Appeal, which consists of a paper docket only, as "R. Vol. [#]" For reference, the paper docket is split into six volumes; the bottom right corner of each page has been marked for citation purposes.
[2] R. Doc. 13
[3] *State v. Bridges*, No. 2014 KA 0777, 2015 WL 997162, at *1 (La. App. 1st Cir. Mar. 6, 2015).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

1

On March 12, 2013, Petitioner was charged with possession of marijuana.[8] On September 18, 2013, Petitioner was found guilty after a jury trial.[9] He was adjudicated to be a second felony habitual offender and sentenced to fifteen years of imprisonment at hard labor.[10] On March 6, 2015, Petitioner's conviction and sentence was affirmed by the Louisiana First Circuit Court of Appeal.[11] On February 26, 2016, the Louisiana Supreme Court denied his application for a writ of review.[12] Petitioner did not petition the United States Supreme Court for a writ of certiorari.[13] Petitioner has not sought collateral review in state court.[14]

On March 3, 2017, Petitioner, pro se, filed the instant petition for a writ of habeas corpus.[15] Petitioner raises six grounds for relief: (1) the prosecutor exercised his peremptory challenges in a racially discriminatory manner against three black female potential jurors, in violation of *Batson v. Kentucky*[16]; (2) the trial judge improperly denied his request to recreate the scene of the traffic stop during trial; (3) the prosecutor improperly elicited testimony that Petitioner refused to consent to a search of his vehicle and commented on that refusal during closing argument; (4) the trial judge improperly refused to hold a hearing on the officer's ability to detect the odor of marijuana; (5) Petitioner was not a second-felony habitual offender; and (6) Petitioner's sentence is constitutionally excessive.[17] Petitioner raised the same claims in his prior appeal to the Louisiana First Circuit Court of Appeal, which found all six claims to be without merit.[18]

---

[8] R. Vo. 1 at 42 (bill of information).
[9] R. Vol. 1 at 207 (jury verdict form), Vol. 4 at 773 (trial transcript).
[10] R. Vol. 1 at 38 (minute entry).
[11] *Bridges*, 2015 WL 997162; R. Vol. 5 at 962–81.
[12] *State v. Bridges*, 15-0675, 187 So. 3d 467 (La. Feb. 26, 2016); R. Vol. 6 at 982.
[13] R. Doc. 1 at 2.
[14] *Id.* at 3.
[15] *Id.*
[16] 476 U.S. 79 (1986).
[17] R. Doc. 1 at 13–43.
[18] *Bridges*, 2015 WL 997162, *2–10; R. Vol. 5 at 961–79.

Respondent Robert Tanner, the warden of the Rayburn Correctional Center, opposes the petition.[19]

After reviewing the record, the Magistrate Judge issued a Report and Recommendation recommending each of the six claims be denied.[20] On April 19, 2018, Petitioner timely filed objections to the Report and Recommendation.[21] He raises objections to the recommendation of denial of each of his six claims.[22]

## ANALYSIS

### I. Standard of Review

In reviewing the Magistrate Judge's Report and Recommendations, the Court must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected.[23] The Court needs only to review the portions of the report to which there are no objections to determine whether they are clearly erroneous or contrary to law.[24]

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court must defer to the decision of the state court on the merits of a pure question of law or a mixed question of law and fact unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[25] A state court's decision is contrary to clearly established federal law if: "(1) the state court applies a rule that contradicts the governing law announced in Supreme Court cases, or (2) the state court decides a case differently

---

[19] R. Doc. 8.
[20] R. Doc. 12.
[21] R. Doc. 13.
[22] *Id.*
[23] *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[24] *Id.*
[25] *Id.* at § 2254(d)(1).

3

than the Supreme Court did on a set of materially indistinguishable facts."[26] AEDPA requires that a federal court "accord the state trial court substantial deference."[27]

## II. *Batson* Challenge

Petitioner claims the prosecutor struck three jurors, Mary White, Alice Cousin, and Shannon Doughty, on the basis of race. The trial judge sustained the *Batson* challenge to Cousin and did not allow the State to exercise a backstrike; Cousin ultimately sat on the jury.[28] As a result, the Court need only determine whether Petitioner has shown the strikes against White and Doughty were racially motivated.

In *Batson*, the Supreme Court held that a prosecutor violates the Equal Protection Clause if he "challenge[s] potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."[29] *Batson* established a three-step process for analyzing claims of racially discriminatory peremptory challenges. First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race.[30] Second, the prosecution must offer a race-neutral basis for striking the juror in question.[31] Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.[32]

### A. *Batson* Step One

The first step of the *Batson* analysis requires a prima facie showing of discrimination by the defendant. In the instant case, the trial court implicitly found a

---

[26] *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003)).
[27] *Brumfield v. Cain*, 135 S.Ct. 2269 (2015).
[28] *Id.*
[29] 476 U.S. at 89 (1986).
[30] *Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008) (quotation marks and brackets omitted).
[31] *Id.*
[32] *Id.*

4

prima facie case had been established when she required the prosecutor to state his reasons for the peremptory strikes. The first step of *Batson* is moot and review by this Court is limited to the second and third steps.[33]

> ### B. *Batson Step Two*

At the second step of the *Batson* analysis, the burden shifts to the prosecution to articulate a race-neutral reason for striking the jurors in question.[34] The prosecutor's "explanation need not rise to the level of justifying exercise of a challenge for cause."[35] "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."[36] In this case, the prosecutor stated he struck White because she had sat on two juries in the past that had returned verdicts for defendants.[37] The prosecutor stated he struck Doughty because she expressed the view that marijuana should be legalized, and he presumed the next two potential jurors would be more favorable to the prosecution.[38] The prosecutor's explanation is facially valid. Discriminatory intent is not inherent in these explanations and, as a result, they are deemed race-neutral.

> ### C. *Batson* Step Three

At the third step of the *Batson* analysis, the burden shifts to the petitioner to show the strike was racially motivated.[39] In *Reed v. Quarterman*, the Fifth Circuit has laid out the following principles to guide a *Batson* step three analysis:

---

[33] *United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2001) ("Where . . . the prosecutor tenders a race-neutral explanation for his peremptory strikes, the question of Defendant's prima facie case is rendered moot and our review is limited to the second and third steps of *Batson* analysis."); *see also United States v. Broussard*, 987 F.2d 215, 220 n.4 (5th Cir. 1993).
[34] *Snyder*, 552 U.S. at 476.
[35] *Batson*, 476 U.S. at 97.
[36] *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion).
[37] R. Vol. 3 at 625.
[38] R. Vol. 4 at 632.
[39] *Rice v. Collins*, 546 U.S. 333, 338 (2006).

5

> If the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, this is evidence that the asserted justification was a pretext for discrimination, even if the two jurors are dissimilar in other respects. Second, if the State asserts that it was concerned about a particular characteristic but did not engage in meaningful voir dire examination on that subject, then the State's failure to question the juror on that topic is some evidence that the asserted reason was a pretext for discrimination. Third, we must consider only the State's asserted reasons for striking the black jurors and compare those reasons with its treatment of the nonblack jurors.[40]

State court findings regarding *Batson* step three are findings of fact and therefore analyzed under the clearly erroneous standard.[41] Under AEDPA, a federal court must accord deference to state court findings of fact and grant relief only if the state court's conclusion was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[42] "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[43]

### 1. White

During voir dire, White stated: "I served on two juries—well, two juries. One was a medical malpractice. Excuse me. And one was a criminal case, and they ended up settling before we actually went to trial. The medical malpractice, the verdict came back for the defendant, not guilty."[44] The State exercised a peremptory strike on White.[45] In response

---

[40] 555 F.3d 364, 376 (5th Cir. 2009) (citing *Miller-El v. Dretke*, 545 U.S. 231 (2005)).
[41] *See, c.f., United States v. Branch*, 989 F. 2d 752, 755 (5th Cir. 1993) (establishing a claim for prima facie discrimination under *Batson* is reviewed for clear error); *See Snyder v. Louisiana*, 552 U.S. 472 (2008) ("On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous."); *See Brewer v. Marshall*, 119 F.3d 993, 1004 (1st Cir. 1997) ("because a *Batson* determination is particularly fact sensitive, it will be accepted unless shown to be clearly erroneous").
[42] 28 U.S.C. § 2254(d)(2).
[43] *Wood v. Allen*, 558 U.S. 290, 301 (2010).
[44] R. Vol. 3 at 561.
[45] *Id.* at 622.

6

to Petitioner's *Batson* challenge at trial, the prosecutor stated he struck White because she had sat on one civil jury and one criminal jury, both of which returned verdicts for defendants.[46] Defense counsel corrected him, stating White had been on one civil jury in a medical malpractice case, which returned a verdict for the defendant, and one criminal jury, for which there was no vote.[47] The trial court clarified, "But she did indicate that there was a verdict, I believe, in a medical malpractice case for the defendant."[48] The prosecutor responded: "[t]hat's not what I understood her to mean, but be that as it may."[49] The trial court found the prosecutor "provided a sufficient explanation for his strike of Ms. White."[50]

The trial court's finding was not clearly erroneous. Under *Reed*, evidence that the State struck a black juror with a particular characteristic, but accepted nonblack jurors with that same characteristic, may show pretext for discrimination.[51] In this case, no other juror who was empaneled or struck stated during voir dire that he or she had returned a verdict for a defendant in a civil or criminal trial.[52] Evidence that the State did not engage in meaningful voir dire examination on the subject may show pretext for discrimination.[53] In this case, the prosecutor questioned ten potential jurors about prior jury service, asking questions about the disposition of each case.[54] The Court finds the State's reason for striking White was not pretextual.[55] Moreover, because defense counsel corrected the

---

[46] *Id.* at 625.
[47] *Id.* at 626.
[48] *Id.*
[49] *Id.* at 626.
[50] R. Vol. 4 at 629.
[51] 555 F.3d at 376 (5th Cir. 2009).
[52] R. Vol. 3 at 558–64. Nancy Thompson, who was not identified as a black juror, stated she had been on a criminal jury that returned a verdict of not guilty, but jury selection was completed before she was considered, and she was not empaneled.
[53] *Reed*, 555 F.3d at 376 (5th Cir. 2009).
[54] R. Vol. 3 at 558–64.
[55] The prosecutor's misunderstanding of White's prior jury service also does not support a finding of a *Batson* violation. Although the prosecutor erroneously believed White had been on a criminal jury that

7

prosecutor, the trial court correctly understood White's prior jury service when finding no *Batson* violation. Under these circumstances, the trial court's finding that the prosecutor's striking of White did not violate *Batson* was not clearly erroneous.

### 2. Doughty

During voir dire, the prosecutor asked if any potential jurors had "a problem with marijuana being prosecuted as a felony."[56] One potential juror, Terry Fontenette, stated he believed marijuana should be legalized.[57] Doughty stated she "kind of agree[d]" and that she believed marijuana possession should not be prosecuted as a felony, but she would give the prosecutor a "fair chance."[58] Steve Conravey stated: "[i]f I was in a position to change the law, I probably would, but I respect the law."[59] The State did not strike Conravey, but the defense did.[60] Julie Young and Craig Rachel also expressed that they did not believe marijuana possession should be a felony.[61] Jury selection was completed before Young, Rachel, and Fontenette were considered.[62]

After six jurors were selected, Doughty was set to be the alternate.[63] The State exercised a peremptory strike on Doughty.[64] The prosecutor stated he struck Doughty

---

returned a verdict of not guilty, a prosecutor's good faith mistake does not violate *Batson*. *Aleman v. Uribe*, 723 F.3d 976, 982 (9th Cir. 2013) ("[I]f a prosecutor makes a mistake in good faith, . . . then that mistake does not support the conclusion that the prosecutor's explanation is clearly not credible."); *see also Lee v. Commissioner, Alabama Dept. of Corrections*, 726 F.3d 1172, 1226 (11th Cir. 2013) ("The conclusion that an honestly mistaken but race-neutral reason for striking a black venire member did not violate *Batson* was not unreasonable."). Nothing in the record indicates the prosecutor's mistake was made in bad faith. To the contrary, in light of White's characterization of the civil jury verdict for the defendant as a "not guilty" verdict, R. Vol. 3 at 561, and the prosecutor's statement that "[t]hat's not what I understood her to mean, but be that as it may," *id.* at 626, the Court finds the prosecutor's mistake was in good faith.

[56] R. Vol. 3 at 572.
[57] *Id.*
[58] *Id.* at 574.
[59] *Id.* at 578.
[60] *Id.* at 623.
[61] *Id.* at 576, 584.
[62] R. Vol. 4 at 633.
[63] *Id.* at 632.
[64] *Id.*

8

because he believed the next two jurors would be more favorable to the prosecution and because of her response that marijuana possession should not be prosecuted as a felony.[65] He stated he had struck Young for the same reason, and was intending to strike Fontenette and "Mr. Thompson," presumably referring to Craig Rachel, not Nancy Thompson.[66] The trial court found, based on this explanation, that the "challenge was racially neutral."[67]

The State did engage in meaningful voir dire examination on the subject of views on marijuana possession, asking each potential juror for his or her opinion.[68] Under *Reed*, the Court considers whether the State struck a black juror with a certain views on marijuana, but accepted nonblack jurors with similar views.[69] Because jury selection was completed before Young, Rachel, and Fontenette were considered, the only candidate for a comparative analysis under *Reed* is Conravey. Doughty stated she believed marijuana possession should not be prosecuted as a felony, but she would give the prosecutor a "fair chance."[70] Steve Conravey stated: "[i]f I was in a position to change the law, I probably would, but I respect the law."[71]

The State did not strike Conravey, but the defense did.[72] The Magistrate found "it is possible that the state could have used a backstrike on Conravey if he had not already been struck by the defense."[73] Petitioner's Objection does not address this argument directly.[74] The Court notes Conravey was the eighth potential juror considered.[75] When

---

[65] *Id.*
[66] *Id.* Craig Rachel and Nancy Thompson were seated next to each other, R. Vol. 3 at 543.
[67] R. Vol. 4 at 633.
[68] R. Vol. 3 at 572–84.
[69] *Reed*, 555 F.3d at 376 (5th Cir. 2009).
[70] R. Vol. 3 at 574.
[71] *Id.* at 578.
[72] *Id.* at 623.
[73] R. Doc. 12 at 14.
[74] R. Doc. 13.
[75] R. Vol. 3 at 623.

the trial court was initially permitting strikes for the first twelve potential jurors, the State used only one strike, but then used two backstrikes.[76] The prosecutor may have been planning to use another backstrike on Conravey. The Magistrate further found "Conravey's comments concerning his belief were not equivalent to Doughty's."[77] "When the prosecutor first asked the panel whether any prospective juror had 'a problem with marijuana being prosecuted as a felony,' Conravey voiced no opinion."[78] "It was only after a prospective juror raised a question about 'the third strike rule' that Mr. Conravey first spoke up."[79] Conravey stated "[i]f I was in a position to change the law, I probably would, but I respect the law," and then, unprompted, he quickly added: "I'd follow the law."[80] As a result, "Conravey never suggested that he would be unwilling to convict someone for possession of marijuana; Doughty did, although she retreated from that position upon subsequent questioning."[81]

Accordingly, in light of the deferential standard of review due to state court findings with respect to *Batson* step three, the Court finds Petitioner has not shown to be clearly erroneous the trial court's finding that the prosecutor's stated reason for striking Doughty was not a pretext for discrimination.

As a result, the Court denies the petition for habeas relief on *Batson* grounds.

## III. Denial of Right to Present a Defense

At trial, Petitioner requested permission to recreate the traffic stop leading to his arrest. The trial judge denied his request. Petitioner argues this denial constitutes a denial

---

[76] *Id.* at 621–25.
[77] R. Doc. 12 at 14.
[78] *Id.*
[79] *Id.* at 15.
[80] R. Vol. 3 at 559-60.
[81] R. Doc. 12 at 15-16.

of his right to present a defense under the due process clause of the Fourteenth Amendment.[82]

"Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. [T]his standard of fairness [r]equires that criminal defendants be afforded a meaningful opportunity to present a complete defense."[83] "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."[84]

The trial court found permitting Petitioner to recreate the conditions of the traffic stop would have been more prejudicial than probative because a significant amount of time had passed between the incident and trial, and how the vehicle was handled in the interim was unknown.[85] The trial court also found "the parties would be unable to recreate the condition of the vehicle and the condition of the marijuana on the night of the incident," and "there was no indication that the jurors had experience smelling marijuana."[86]

The Court is aware of no cases, and Petitioner provides none, in which a court's refusal to permit a recreation of a traffic stop was found to violate due process. The trial court's refusal to permit a recreation of a traffic stop in this case comported with federal

---

[82] *Id.* at 17–20.
[83] *California v. Trombetta*, 467 U.S. 479, 485 (1984); *accord Boyer v. Vannoy*, 863 F.3d 428, 451 (5th Cir. 2017).
[84] *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).
[85] *Bridges*, 2015 WL 997162, at *3–5.
[86] R. Vol. 5 at 939.

law. Petitioner has not shown the state court decisions were contrary to clearly established federal law or were an unreasonable application of clearly established federal law.

IV. **Testimony and Argument Concerning Petitioner's Refusal to Consent to the Search of the Vehicle**

Petitioner argues his Fourth Amendment due process rights were violated when the prosecutor elicited testimony during trial that Petitioner refused to consent to a search of his vehicle and commented on that refusal during closing argument.[87] The state appellate court found the prosecution "elicited the testimony in response to defendant's suggestion that he was entirely cooperative."[88] The appellate court found the testimony explained why a K-9 unit was called.[89] Petitioner argues the state court's analysis of this claim was an unreasonable application of clearly established federal law.[90]

To determine whether a state court's analysis was an unreasonable application of clearly established federal law, courts "measure state-court decisions against [the Supreme] Court's precedents as of the time the state court renders its decision."[91] The Fifth Circuit "has not directly addressed the question whether a prosecutor commits constitutional error by invoking a defendant's refusal to consent to a warrantless search to support an inference of guilt."[92] However, the Fifth Circuit has noted: "the circuit courts that have directly addressed this question have unanimously held that a defendant's refusal to consent to a warrantless search may not be presented as evidence of guilt."[93]

---

[87] R. Doc. 12 at 20.
[88] *Id.*
[89] *Id.*
[90] R. Doc. 13 at 18.
[91] *Greene v. Fisher*, 565 U.S. 34, 44 (citing *Cullen v. Pinholster*, 563 U.S. 170 (2011)) (internal quotation marks and emphasis omitted).
[92] *United States v. Runyan*, 290 F.3d 223, 249 (5th Cir. 2002).
[93] *Id.* (citing *United States v. Moreno*, 233 F.3d 937, 940–41 (7th Cir. 2000); *United States v. Dozal*, 173 F.3d 787, 794 (10th Cir.1999); *United States v. Thame*, 846 F.2d 200, 205–08 (3d Cir. 1988); *United States v. Prescott*, 581 F.2d 1343, 1351–52 (9th Cir. 1978)).

However, this Court is unaware of no Supreme Court opinion, and Plaintiff cites none, addressing the issue, let alone a Supreme Court opinion addressing the issue as of the time of the state court's decision. Habeas relief is warranted only if a petitioner establishes a state court decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the *Supreme Court of the United States*."[94] Circuit precedent does not constitute "clearly established Federal law" for purposes of habeas relief.[95] Further, the Supreme Court has rejected arguments that "circuit precedent c[an] help determine what law is clearly established" where the Supreme Court has "not opine[d]" on an issue and the circuit precedent does not arise under the AEDPA.[96] Because the Supreme Court had not held unconstitutional a prosecutor's eliciting testimony concerning a defendant's refusal to consent to a search as of the time of the state court's decision, Petitioner is not entitled to habeas relief.

## V. *Daubert* Hearing

Petitioner claims his rights were violated by the trial court's refusal to hold a *Daubert* hearing on the ability of the officer to detect the odor of marijuana.[97] On direct appeal, the state appellate court held the district court did not err in admitting the officer's testimony. The appellate court found that, because the officer had training in identifying and smelling smoked and unsmoked marijuana, no *Daubert* hearing was required[98] under Louisiana Code of Evidence article 702, which permits an officer to "testify as to

---

[94] 28 U.S.C. § 2254(d)(1) (emphasis added).
[95] *Glebe v. Frost*, 135 S.Ct. 429, 431 (2014) (quoting 28 U.S.C. § 2254(d)(1)).
[96] *Id.* (internal quotation marks, ellipses, and citations omitted).
[97] R. Doc. 1 at 32.
[98] *Bridges*, 2015 WL 997162, at *7–9; R. Doc. 12 at 25; R. Vol. 5 at 973.

matters within his personal knowledge acquired through experience without first being qualified as an expert."[99]

The United States Supreme Court's decision in *Daubert* interprets the Federal Rules of Evidence and, as a result, does not bind the states.[100] Noncompliance with *Daubert* is not a basis for federal habeas corpus relief.[101] When a state prisoner seeks habeas relief based on purportedly erroneous evidentiary rulings by a state court, the errors must be so extreme as to constitute "a denial of fundamental fairness."[102] The question before a federal court reviewing an evidentiary ruling is whether the purported evidentiary error "played a crucial, critical, and highly significant role in the trial."[103] The standard for granting habeas corpus relief is "not whether the testimony satisfied the *Daubert* test, [but] whether the wrongful admission of evidence rendered the trial fundamentally unfair."[104]

The state courts found no error in the admission of the officer's testimony. State courts are the final arbiters of state law,[105] and this Court may not question the Louisiana Supreme Court's interpretation of the Louisiana Code of Evidence.

---

[99] *Id.* (*State v. Waldrop*, 11-2363, 93 So.3d 780, 784 (La. App. 1st Cir. Jun. 8, 2012).
[100] *See Kinder v. Bowersox*, 272 F.3d 532, 545 n.9 (8th Cir. 2001) ("*Daubert* is an exegesis of Rule 702 of the Federal Rules of Evidence and governs the admission of expert evidence in federal trials only. *Daubert* does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution."); *see also Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998).
[101] *Schmidt v. Hubert*, Civ. Action No. 05-2168, 2008 WL 4491467, at *13 (W.D. La. Oct. 6, 2008) ("*Daubert* did not set a constitutional standard for the admission of testimony; the case simply examined the standard for the admissibility of scientific evidence in federal trials conducted in federal courts under the Federal Rules of Evidence. Thus, a claimed violation of *Daubert* does not equal a constitutional violation.").
[102] *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998).
[103] *Id.*
[104] *Schmidt*, 2008 WL 4491467, at *14.
[105] *See Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co.*, 706 F.3d 622, 629 (5th Cir. 2013) (quotation marks omitted) (brackets omitted); *Charles v. Thaler*, 629 F.3d 494, 500–01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law. When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law."); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.").

The Court finds the admission of the officer's testimony did not render the trial fundamentally unfair. The officer's testimony was subject to cross examination. Defense counsel had ample opportunity to challenge the officer's assertion that he could smell and identify marijuana stored in Petitioner's glove compartment. Witnesses routinely testify to matters they perceive through their senses, and factfinders must determine the credibility of those witnesses and whether they could have perceived the action, event, or substance. The claim is denied.

## VI. Habitual Offender Adjudication

Petitioner argues he was wrongly held to be a second-felony habitual offender. Petitioner argues the guilty plea entered in his prior offense was invalid because (1) it was pleaded pursuant to a group guilty plea, (2) he was not advised of his post-conviction rights, and (3) he was not advised his guilty plea could be used to enhance a subsequent felony offense.[106] On direct appeal, the Louisiana First Circuit Court of Appeal denied the claim.[107] The appellate court held the entry of a group guilty plea was valid. The appellate court further found the trial court in the prior offense *did* advise Petitioner of his post-conviction rights.[108] The appellate court also held that, although Petitioner was not advised his guilty plea could be used to enhance a subsequent felony offense, "such advice has never formed part of the Supreme Court's *Boykin* requirements."[109] For these reasons, the appellate court found that the record established that the challenged

---

[106] R. Doc. 1 at 34–36.
[107] *Bridges*, 2015 WL 997162, at *7-9; R. Doc. 12 at 28–30; R. Vol. 5 at 973–76.
[108] *Id.*
[109] *Id.* (*State v. Guzman*, 99-1528, 99-1753 (La. May 16, 2000), 769 So.2d 1153, 1164; *State v. Underdonk*, 11-1598 (La. App. 1 Cir. Mar. 23, 2012), 92 So.3d 369, 378, writ denied, 12—0910 (La. Oct. 8, 2012), 98 So.3d 848.

predicate guilty plea was validly entered with a "knowing and voluntary waiver of *Boykin* rights."[110]

For the reasons found by the Louisiana First Circuit Court of Appeal, Petitioner has failed to show his predicate conviction was invalid. Regarding this claim, the Court is aware of no Supreme Court cases, and Petitioner cites none, establishing a group colloquy violates the Constitution.[111] A court's failure to advise a defendant his guilty plea could be used to enhance a subsequent felony offense does not render his guilty plea invalid under federal law.[112]

Petitioner's complaint that the trial court failed to advise him of his right to seek post-conviction relief also is meritless, as noted earlier, because the state court found that petitioner was advised of his rights as part of a group entering guilty pleas. Petitioner's claim that his predicate conviction was invalid is without merit.

## VII. Excessive Sentence

Petitioner claims his sentence is excessive and violates the Eighth Amendment and Louisiana state law. On direct appeal, the Louisiana First Circuit Court of Appeal denied the claim and the Louisiana Supreme Court denied Petitioner's related writ application without assigning additional reasons. Petitioner's claim that his sentence is excessive under Louisiana law is not cognizable in a federal habeas corpus proceeding.[113] Federal habeas corpus relief is available only to correct violations of federal constitutional law and

---

[110] *Id.*
[111] *United States v. Williams*, 20 F.3d 125, 133 n.9 (5th Cir. 1994) ("[T]here is no fixed colloquy, no set sequence or number of questions and answers, no minimum length of the hearing, and no talismanic language that is required to be used in guilty-plea hearings.") (citation and internal quotation omitted).
[112] *Wright v. United States*, 624 F.2d 557, 561 (5th Cir. 1980) ("[A] plea's possible enhancing effect on a subsequent sentence is merely collateral consequence of conviction; it is not the type of consequence about which a defendant must be advised before the defendant enters the plea."); *State v. Jackson*, 734 So.2d 54, 56) (La. App. 2d Cir. 1999) ("A court is not required to inform a defendant that his guilty plea may be used as a basis for the filing of a future multiple offender bill.").
[113] *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).

16

a federal habeas court will not review the legality of a prisoner's sentence under state law.[114] The Court turns to Petitioner's claim that his sentence is excessive under federal law.

The United States Supreme Court has found an Eighth Amendment violation when a sentence "is grossly disproportionate to the severity of the crime."[115] The United States Supreme Court has offered little guidance on how to analyze an unconstitutionally excessive sentence claim. In *Lockyer v. Andrade*, the Court held the "only relevant clearly established law" to excessive sentence claims is the "gross disproportionality principle," but stated "the precise contours of [the principle] are unclear," and the principle is "applicable only in the exceedingly rare and extreme case."[116] District courts in the United States Fifth Circuit must first make a threshold comparison of the gravity of the prisoner's offenses against the severity of the sentence.[117] If the district court determines the sentence is grossly disproportionate to the offense, the court may compare the sentence to sentences for similar crimes in the same jurisdiction and sentences for the same crime in other jurisdictions.[118]

There are additional guiding principles that must be considered when determining whether a sentence is excessive. Federal courts must afford deference to state legislatures, which have the authority to enact criminal laws and fix sentences.[119] The Supreme Court

---

[114] *See, e.g., Nyberg v Cain*, No. 15-98, 2015 WL 1540423, at *12 (E.D. La. Apr. 7, 2015); *Phillips v. Cain*, No. 13-5868, 2014 WL 4425751, at *10 (E.D. La. Sept. 8, 2014); *adopted*, 2014 WL 5080246 (E.D. La. Sept. 26, 2014); *Brunet v. Goodwin*, No. 12-1974. 2013 WL 623505, at *12 (E.D. La Jan. 22, 2013), *adopted*, 2013 WL 619278 (E.D. La. Feb. 19, 2013).
[115] *Rummel v. Estelle*, 445 U.S. 263, 271 (1980).
[116] 538 U.S. 63, 73 (2003).
[117] *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) (quotation marks omitted).
[118] *Id.* at 316 (quotation marks omitted).
[119] *See Solem v. Helm*, 463 U.S. 277, 290 (1983) ("Reviewing courts... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes..."); *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997) ("[T]he determination of prison sentences is a legislative prerogative that is primarily within the province of the legislatures, not courts.").

has held states may sentence repeat offenders to harsher sentences than first time offenders because they've been shown to be less likely to "conform[] to the norms of society as established by criminal law."[120] Successful federal habeas corpus relief for excessive sentence claims is rare outside of capital punishment.[121]

Petitioner's sentence was enhanced because he was a second-felony offender. When assessing Petitioner's excessive sentence claim, a court must take into account his prior offense.[122] Petitioner was previously convicted of sexual battery for which he received a five-year sentence. In *Rummel v. Estelle*, the United States Supreme Court's benchmark decision on excessive sentences, the defendant's predicate offense of fraudulent use of a credit card and forging a check was deemed sufficient to contribute to a life sentence for falsely obtaining $120.75.[123] Petitioner's predicate charge of sexual battery was as serious as fraudulent use of a credit card and his charge of felony possession of marijuana was similarly as serious as falsely obtaining a relatively small amount of money. Affording the state legislature and state courts appropriate deference on habeas review, Petitioner has not shown his sentence is grossly disproportionate.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Petitioner Dwight A. Bridge's petition for federal habeas corpus relief be and hereby is **DISMISSED WITH PREJUDICE**.[124]

**New Orleans, Louisiana, this 12th day of August, 2019.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[120] *Rummel*, 445 U.S. at 276.
[121] *Id.* at 271–72.
[122] *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).
[123] 445 U.S. at 276.